Richard G. Menaker (RM 4716)
Stephen D. Houck (SH 0959)
Menaker & Herrmann LLP
10 East 40th Street
New York, New York 10016
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                 :

ROCCO J. LAFARO, M.D., ARLEN G.     :   07 Civ. 7984 (SCR)
FLEISHER, M.D., and CARDIAC SURGERY
GROUP, P.C.,                    :

                     Plaintiffs,     :

                                   :

        -against-            :

NEW YORK CARDIOTHORACIC GROUP,   :
PLLC, STEVEN L. LANSMAN, M.D., DAVID
SPIELVOGEL, M.D., WESTCHESTER    :
COUNTY HEALTH CARE CORPORATION and
WESTCHESTER MEDICAL CENTER     :

                    Defendants.   :

                                   :
------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS AFFIRMATIVE DEFENSES

February 1, 2008

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................ iii

Preliminary Statement .......................................................... 1

Factual Background ............................................................. 2

Argument ...................................................................... 4

I.   The First Affirmative Defense, Based on the Statute of Limitations,
     Is without Merit  ......................................................... 4

II.  The Fifth Affirmative Defense Should Be Dismissed
     Because Plaintiffs Have Adequately Alleged the Requisite
     Effect upon Interstate Commerce .......................................... 5

III. The Sixth and Eight Affirmative Defenses Should Be
     Dismissed Because Plaintiffs Have Adequately Alleged
     The Existence of Proper Product and Geographic Markets
     and Market Power ......................................................... 7

IV.  The Seventh Affirmative Defenses Should Be Dismissed
     Because Plaintiffs Are Not Required to Allege an Intent
     to Unreasonably Restrain Trade .......................................... 10

V.   The Ninth Affirmative Defense Should Be Dismissed
     Because Defendants Are Separate Economic Actors
     Capable of Conspiracy ................................................... 11

VI.  The Twelfth Affirmative Defense Should Be Dismissed
     Because Plaintiffs' Antitrust Claims Are Not Conclusory ................. 13

VII. The Fourteenth and Fifteenth Affirmative Defenses, Based
     on the Existence Of Documentary Evidence, Is without Merit  ............. 14

VIII. The Nineteenth and Twentieth Affirmative Defenses,
     Based on the Failure to State a Claim for Tortious
     Interference with Prospective Business, Is without Merit  ............... 15

     a.   Plaintiffs Have Properly Alleged Causation ........................ 16

     b.    Plaintiffs Need Not Establish That Defendants' Sole
          Intent Was To Harm Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IX.   The Twenty-Second and Twenty-Third Affirmative Defenses,
     Based on the Failure To Exhaust All Remedies with
     the Public Health Council, Is without Merit . . . . . . . . . . . . . . . . . . . . 18

     a.    Plaintiffs Need Not Exhaust All Necessary
          Administrative Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     b.    Plaintiffs Need Not Commence and Exhaust Administrative
          Remedies with the Public Health Council . . . . . . . . . . . . . . . . . . . . 19

X.    The Twenty-Sixth Affirmative Defense, Based on
     Waiver, Release, Estoppel and Laches, Is Improperly
     Pleaded and without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     a.    Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     b.    Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     c.    Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     d.    Laches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XI.   The Twenty-Ninth Affirmative Defense Is without Merit . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*
__ U.S.__, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . 13

*Bentivegna v. Meenan Oil Co., Inc.*
126 A.D.2d 506, 510 N.Y.S.2d 626 (2d Dept. 1987) . . . . . . . . . . . . . . . . . . . . . 20

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*
369 F.3d 212 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bolt v. Halifax Hosp. Med. Ctr.*
891 F.2d 810 (11th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assoc.*
996 F.2d 537 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chime v. Sicuranza*
221 A.D.2d 401, 633 N.Y.S.2d 536 (2nd Dept. 1995) . . . . . . . . . . . . . . . . . . . . 19

*Classic Appraisals Corp. v. DeSantis*
159 A.D.2d 537, 552 N.Y.S.2d 402 (2nd Dept. 1990) . . . . . . . . . . . . . . . . . . . . . 4

*Continental T.V., Inc. v. GTE Sylvania Inc.*
433 U.S. 36, 97 S.Ct. 2549 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Copperweld Corp. v. Independence Tube Corp.*
467 U.S. 752, 104 S. Ct. 2731, 81 L.Ed.2d 628 (1984) . . . . . . . . . . . . . . . . . . . 11

*Four Finger Art Factory, Inc. v. Dinicola*
2000 WL 145466 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fritz v. Huntington Hospital*
39 N.Y.2d 339, 384 N.Y.S.2d 92 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Furlong v. Long Island College Hospital,*
710 F.2d 922 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gelbard v. Genesee Hosp.*
  211 A.D.2d 159, 626 N.Y.S.2d 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Glenesk v. Guidance Realty Corp.*
  36 A.D.2d 852, 321 N.Y.S.2d 685 (2d Dept. 1971) . . . . . . . . . . . . . . . . 14, 20, 21

*Goldfarb v. Virginia State Bar*
  421 U.S. 773, 95 S. Ct. 2004 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hospital Building Co. v. Trustees of Rex Hospital*
  425 U.S. 738, 96 S. Ct. 1848 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Illinois Brick Co. v. Illinois*
  431 U.S. 720, 97 S.Ct. 2061 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Iqbal v. Hasty*
  490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*
  61 F.3d 123 (2nd Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mahmud v. Kaufmann*
  454 F.Supp.2d 150 (S.D.N.Y 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Mahmud v. Kaufmann*
  496 F.Supp.2d 266 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Maric v. St. Agnes Hospital Corp.*
  65 F.3d 310 (2d Cir. 1995) (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*
  795 F.Supp. 639 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pfizer, Inc. v. Government of India*
  434 U.S. 308 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Reddy v. Puma*
  2006 WL 2711535 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*RKO Century Warner Theatres, Inc. v. Morris Industrial Builders*
    1997 WL 602495 (S.D.N.Y) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Roth v. Jennings*
    489 F.3d 499 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schlaifer v. Sedlow*
    51 N.Y.2d 181, 433 N.Y.S.2d 67 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Shields v. School of Law, Hofstra University*
    77 A.D.2d 867, 431 N.Y.S.2d 60 (2d Dept. 1980) . . . . . . . . . . . . . . . . . . . . . . . 21

*Streit v. Bushnell*
    424 F.Supp.2d 633 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Summit Health, Ltd. v. Pinhas*
    500 U.S. 322, 111 S. Ct. 1842 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*
    687 F. Supp. 832 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Times-Picayune Pub. Co. v. United States*
    345 U.S. 594 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Teitler v. Max J. Pollack & Sons*
    288 A.D.2d 302, 733 N.Y.S.2d 122 (2d Dept. 2001) . . . . . . . . . . . . . . . . . . . 14, 15

*Tsadik v. Beth Israel Medical Center*
    13 Misc.3d 359, 822 N.Y.S.2d 395 (Sup. Ct. New York Co. 2006) . . . . . . . 18, 19

*U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers Local
Union Number 3, AFL-CIO*
    2002 WL 91625 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Employing Plasterers Association*
    347 U.S. 186, 74 S.Ct. 452 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. South-Eastern Underwriters Assn.*
    322 U.S. 553, 64 S. Ct. 1162 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*
    516 F.Supp.2d 270, 294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes and Rules**

15 U.S.C. §15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.Y. C.P.L.R. 213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.Y. C.P.L.R. 214(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.Y. C.P.L.R. 3211(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.Y. General Business Law §340(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Richard G. Menaker (RM 4716)
Stephen D. Houck (SH 0959)
Menaker & Herrmann LLP
10 East 40th Street
New York, New York 10016
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                      :

ROCCO J. LAFARO, M.D., ARLEN G.    :    07 Civ. 7984 (SCR)
FLEISHER, M.D., and CARDIAC SURGERY  :
GROUP, P.C.,                     :
                                        :

                  Plaintiffs,    :
                                        :

        -against-                :

NEW YORK CARDIOTHORACIC GROUP,    :
PLLC, STEVEN L. LANSMAN, M.D., DAVID  :
SPIELVOGEL, M.D., WESTCHESTER      :
COUNTY HEALTH CARE CORPORATION and :
WESTCHESTER MEDICAL CENTER      :
                                        :

                Defendants.    :
                                        :
-------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS AFFIRMATIVE DEFENSES

      Plaintiffs move pursuant to Rule 12(f), Fed. R. Civ. P. and respectfully submit

this memorandum of law to dismiss the following affirmative defenses: First, Fifth, Sixth,

Seventh, Eighth, Ninth, Twelfth, Fourteenth, Fifteenth, Nineteenth, Twentieth, Twenty-

Second, Twenty-Third, Twenty-Sixth and Twenty-Ninth.  Plaintiffs have refrained from

moving against five additional affirmative defenses (Second, Third, Fourth, Thirty-First and Thirty-Second), which defendants have stated will be put in issue by their motion for judgment on the pleadings and which plaintiffs will have an opportunity to address in their responsive papers.

## FACTUAL BACKGROUND

Plaintiffs are two cardiothoracic surgeons, Dr. Rocco J. Lafaro and Dr. Arlen G. Fleisher, and their practice group, Cardiac Surgery Group, P.C. ("CSG"). Complaint, ¶¶ 1-3. Defendants are Westchester Medical Center ("WMC"), a public hospital based in Valhalla, New York, Westchester County Health Corporation ("WHCC"), a public benefit corporation that owns and operates WMC, Hospitals, two cardiothoracic surgeons, Dr. Steven L. Lansman and Dr. David Spielvogel, and their practice group New York Cardiothoracic Group PLLC ("NYCG"). *Id.*, ¶¶ 4-8.

The gravamen of plaintiffs' complaint is that their competitors, Lansman, Spielvogel and NYCG, entered into an unlawful, exclusive agreement with the other defendants that has restricted plaintiffs' ability to expand their practice at WMC and fully serve their patients' needs. *Id.*, ¶¶ 24 *et seq.* Plaintiffs allege that the exclusionary agreement at issue is an express, written one, embodied in a Professional Services Agreement entered into by all defendants on or about December 29, 2004 (a copy of which is annexed as Exhibit B to the Affidavit of Richard G. Menaker, dated January 25, 2008). *Id.*, ¶¶ 31-32. By this agreement, defendants WHC and WHCC have authorized defendants Landsman,

Spielvogel and NYCG to restrict the quantity and quality of services provided by plaintiffs and other physicians with whom they compete. *Id.*, ¶ 56. Plaintiffs allege that defendants have taken specific actions in furtherance of their unlawful agreement, preventing plaintiffs from expanding their practice and better serving their patients. Complaint, ¶¶ 32 *et seq.* For example, the Complaint alleges that defendants have refused to allow Michael Evans, a highly qualified physician's assistant employed in New Jersey, to assist plaintiffs in procedures performed at WMC. *Id.*, ¶¶ 37-41.

Plaintiffs allege that defendants' unlawful actions have both injured their business and diminished the quality of care available to cardiothoracic surgery patients in the relevant markets. *Id.*, ¶¶ 37, 38, 46, 56 and 71. Plaintiffs have identified with specificity both the relevant product markets (for emergency cardiothoracic surgery, for urgent cardiothoracic surgery and for emergency pulmonary surgery) and the relevant geographic market (the segment of the lower Hudson Valley north of the Cross County Parkway in Westchester County and south of Interstate 84 and Rockland and Orange Counties). *Id.*, ¶¶ 49 and 50.

In their First Amended Answer to the Complaint, defendants asserted thirty-two affirmative defenses. Defendants' counsel offered to consider withdrawing certain of these defenses "to avoid unnecessary motion practice and conserve judicial resources," provided that plaintiffs identified those they intended to move to dismiss and the reasons therefor. Affidavit of Richard G. Menaker, sworn to January 31, 2008, at ¶ 3. Although

plaintiffs complied with their request, defendants ultimately agreed to withdraw with prejudice just the portion of the First Affirmative Defense related to the antitrust law claims and the Twenty-Eighth Affirmative Defense (incorrectly numbered twenty-seventh in the letter). *Id.*, ¶ 7.

## ARGUMENT

### I.    The First Affirmative Defense, Based on the Statute of Limitations, Is without Merit.

Defendants continue to assert a statute of limitations defense as to Counts II and III of the Complaint.  *See* Exhibit E to the Menaker Aff[1] Count II of plaintiffs' Complaint is for breach of contract and defendants' tortious interference with plaintiffs' contract with WMC and WCHCC.  Count III is for defendants' tortious interference with plaintiffs' prospective business relations.  Complaint, ¶¶ 60-73.  The statute of limitations for breach of contract is six years.  N.Y. C.P.L.R. 213.  The statute of limitations period begins to run at the time of the breach.  *Streit v. Bushnell*, 424 F. Supp.2d 633, 642 (S.D.N.Y. 2006).  Section 214(4) of the N.Y. C.P.L.R. provides a three-year statute of limitations for both tortious interference with a contract and tortious interference with prospective business relations.  *Classic Appraisals Corp. v. DeSantis*, 159 A.D.2d 537, 552 N.Y.S.2d 402 (2nd Dept. 1990); *Four Finger Art Factory, Inc. v. Dinicola*, 2000 WL 145466 (S.D.N.Y. 2000).

---

[1] Defendants have agreed to dismiss their First Affirmative Defense insofar as it relates to the antitrust cause of action (Count I). *Id.*

The statute of limitations period began to run, at the earliest, on January 1, 2005, when the Professional Services Agreement became effective. *See* Exhibit B to the Menaker Aff. Plaintiffs filed their Complaint on September 10, 2007, well within the statute of limitations period provided by statute with respect to the torts alleged in Counts II and III. Defendants' First Affirmative Defense is, therefore, without merit and should be dismissed.

## II. The Fifth Affirmative Defense Should Be Dismissed Because Plaintiffs Have Adequately Alleged the Requisite Effect upon Interstate Commerce.

Defendants' Fifth Affirmative Defense asserts that "plaintiffs have not adequately alleged...a substantial effect upon interstate commerce." The Complaint, however, includes specific allegations that the activities and services at issue affect interstate commerce. For example, it alleges that defendants engaged in interstate commerce in a variety of ways relating to the services at issue in the Complaint – by obtaining equipment and medications used in cardiothoracic surgery, by staffing the cardiothoracic surgery section at WMC and by receiving payments from third-party payers. Complaint, ¶ 48. In addition, the Complaint alleges a clear-cut impact upon interstate commerce flowing directly from defendants' unlawful activities: their concerted refusal to permit plaintiffs to expand their practice and to provide optimal staff support for their patients by hiring a highly qualified physician's assistant employed at St. Joseph's Hospital in Paterson, New Jersey. *Id.*, ¶¶ 38 and 40.

Congress, in enacting the Sherman Act, went "to the utmost extent" of its

power to regulate interstate commerce. *United States v. South-Eastern Underwriters Assn.*, 322 U.S. 553, 558, 64 S. Ct. 1162, 1176 (1944). As the Supreme Court said in *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743, 96 S. Ct. 1848, 1852 (1976), upholding the adequacy of an antitrust complaint that alleged defendants had purchased medical supplies and received payments from third party payers in interstate commerce: "If it is interstate commerce that feels the pinch, it does not matter how local the operation which supplies the squeeze."

In *Furlong v. Long Island College Hospital*, 710 F.2d 922, 925 (2d Cir. 1983), the Second Circuit stated:

> The interstate commerce component of an antitrust case may be established in two ways. First, plaintiff may allege and prove that defendant's conduct is "within" the stream of interstate commerce. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S. Ct. 2004 (1975). Alternatively, plaintiff may allege and prove that defendant's conduct, although entirely local or confined to one state, nonetheless "affects" interstate commerce. *United States v. Employing Plasterers Association*, 347 U.S. 186, 189, 74 S.Ct. 452, 454 (1954).

Here plaintiffs' pleading plainly satisfies the "within" commerce test because it alleges that defendants have conspired to prevent them from hiring a physician's assistant employed across state lines in New Jersey.[2] Plaintiffs' pleading also contains allegations more than sufficient to satisfy the "affecting commerce" test, defined by the *Furlong* court as "a not

---

[2] As Chief Justice Burger stated in *Goldfarb*: "once an effect [on interstate commerce] is shown, no specific magnitude need be proved." 421 U.S. at 785.

insubstantial effect on the interstate commerce involved." 710 F.2d at 926. Thus, for

example, in *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 332, 111 S. Ct. 1842, 1848 (1991),

the Supreme Court held that the interstate commerce requirement was satisfied by an

allegation that the plaintiff, an ophthalmologist, was improperly excluded from the Los

Angeles ophthalmological services market, noting that the alleged exclusion "must be

measured, not just by a particularized evaluation of [plaintiff's] own practice, but rather, by

a general evaluation of the impact of the restraint on other participants and potential

participants in the market from which he has been excluded." Accordingly, the allegations

of the Compliant satisfy not just one, but both *Furlong* tests, and the Fifth Affirmative

Defense should be dismissed.

**III.    The Sixth and Eight Affirmative Defenses Should
Be Dismissed Because Plaintiffs Have Adequately
Alleged the Existence of Proper Product and
Geographic Markets and Market Power.**

The Sixth Affirmative Defense asserts that "plaintiffs have not adequately

alleged the existence of a proper relevant product market and geographic market in which

defendants' purported actions unreasonably restrained trade." The Complaint, however,

defines with clarity and specificity the relevant markets at issue. Thus, the relevant product

markets are defined as "(a) the market for emergency cardiothoracic surgery; (b) the market

for urgent cardiothoracic surgery; and c) the market for emergency pulmonary surgery."

Complaint, ¶ 48. Similarly, the relevant geographic market is defined as "the segment of the

lower Hudson Valley north of the Cross County Parkway in Westchester County, south of

-7-

Interstate 84 and Rockland and Orange Counties." *Id.*, ¶ 50.

These particularized allegations are more than adequate to meet the pleading requirements for relevant product and geographic markets. For example, in *U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers Local Union Number 3, AFL-CIO*, 2002 WL 91625, at *6-7 (S.D.N.Y. 2002), the court denied a motion to dismiss on the basis of inadequate market definition where the plaintiff union pleaded a plausible market for installation of telecommunications wiring and systems in commercial buildings in five counties where it operated. As the court there stressed, market determination in an antitrust case is ultimately a question of fact, and a complaint need only identify with specificity a relevant market -- not prove that it is the correct one. *Id.  See also Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F. Supp. 639 (S.D.N.Y. 1992) (relevant market of "diamond-cut gold charms" is adequately pleaded as not "patently implausible solely on the basis of the four corners" of the complaint).

Here, the Complaint goes well beyond the requirement of identifying with specificity the relevant markets in which defendants are alleged to have unreasonably restrained trade. It also explains the rationale for the definitions given. Thus, as to the relevant product market, it states that "[i]n the vast majority of relevant patient cases, [emergency and urgent cardiothoracic and pulmonary surgery] services are not interchangeable either with treatment by medication or with intervention by nonsurgical procedures using a catheter." Complaint, ¶ 49. Similarly, it states as to  the relevant

geographic market that "emergency services involving apparent heart attack or collapsed lung are highly time - and distance-sensitive, and WMC...is the medical facility used by greater than 80% of the patients experiencing symptoms of such conditions in that geographic area." *Id.*, ¶ 50.

The Eighth Affirmative Defense asserts that "plaintiffs have not adequately alleged that defendants have market power over the relevant market." Market power is defined as "the ability to raise price significantly above the competitive level without losing all of one's business." *Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F.Supp.2d 270, 294 (S.D.N.Y. 2007). Market share may be used as a proxy to demonstrate market power. *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2nd Cir.1995). The Complaint here alleges that WHC has market share of over 80% due to the highly time- sensitive and distance-sensitive nature of emergency services. *Id.*, ¶ 50. Further, as the Complaint alleges, the selection of facilities has to be done on an expedited basis due to the time-sensitive nature of the services provided. *Id.*, Complaint, ¶ 51. These allegations suffice to meet the pleading requirements at this stage. *See U.S. Information Systems, Inc. , supra,* 2002 WL 91625 at *9. ("While the Complaint does not allege that Defendants possess a large (percentage) share of the (telecommunications installation) market, Defendants' economic power may be inferred, among other things, from allegations that Defendants have the ability to (and, do) control prices and exclude competition.... Plaintiffs allege that '[t]he defendants' unlawful actions have ... (ii) excluded the plaintiffs

-9-

from a wide range of legitimate . . . business opportunities; ... [and] (vi) significantly increased the costs paid and decreased the choices available to building owners and tenants and other telecommunications customers.'")

Plaintiffs have more than met their burden of alleging relevant markets and defendants' market power therein. Defendants' assertion to the contrary is without merit and, therefore, their Sixth and Eighth Affirmative Defenses should be dismissed.

### IV. The Seventh Affirmative Defenses Should Be Dismissed Because Plaintiffs Are Not Required to Allege an Intent to Unreasonably Restrain Trade.

The Seventh Affirmative Defense is predicated upon plaintiffs' failure to allege that defendants combined or conspired with an "intent" to unreasonably restrain trade. There is, however, no separate pleading requirement of intent with respect to a violation of Section 1 of the Sherman Act. As the Second Circuit stated in *Maric v. St. Agnes Hospital Corp.,* 65 F.3d 310, 313 (2d Cir. 1995), cert. denied, 516 U.S. 1115 (1996): "In order to establish a claim under §1, a plaintiff must...show (1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce."[3]  Accordingly, the allegations of the Complaint are more than sufficient to state a cause of action for unreasonable restraint of trade, and  defendants' Seventh Affirmative Defense should be dismissed.

---

[3] By contrast, a plaintiff who seeks to establish that a defendant has committed the offense of attempted monopolization under Section 2 of the Sherman Act must establish "a specific intent to destroy competition or build monopoly." *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 626 (1953).

### V.  The Ninth Affirmative Defense Should Be Dismissed Because Defendants Are Separate Economic Actors Capable of Conspiracy.

The Ninth Affirmative Defense states that "defendants were not separate economic actors, but employees, officers, agents and/or divisions of a single enterprise." This is the so-called Copperweld defense.  In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S. Ct. 2731, 81 L.Ed.2d 628 (1984), the Supreme Court held that a parent corporation and its wholly-owned subsidiary lacked sufficient independence to be capable of conspiring with one another for purposes of Section 1 of the Sherman Act.

The *Copperweld* defense, however, has no application here for the reasons stated recently by Judge Connor in *Mahmud v. Kaufmann*, 496 F.Supp.2d 266, 276 (S.D.N.Y. 2007), where he denied defendant physicians' motion to dismiss plaintiff physician's complaint alleging a conspiracy to deny her hospital staff privileges:

> [T]he Second Circuit has expressly held that "member physicians of an independent practice association [are] legally capable of conspiring among themselves" for purposes of the Sherman Antitrust Act. *See Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assoc.*, 996 F.2d 537, 544, (2d Cir.), cert. denied, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993). The court reasoned that when hospital staff physicians have independent and competing economic interests, they are not a single entity incapable of conspiring as a matter of law. *See id.* "Each doctor practices medicine in his or her own individual capacity; each is a 'separate economic entity potentially in competition with other physicians.' " *Id.* (*quoting Bolt v. Halifax Hosp. Med. Ctr.*, 891 F.2d 810, 819 (11th Cir.1990)).

*See also Reddy v. Puma*, 2006 WL 2711535, at *5-7 (E.D.N.Y. 2006).

Here defendants' assertion of a *Copperweld* defense is not only wrong as a matter of law, but is belied by their own pleadings. The Complaint here alleges that individual defendants Landsman and Spielvogel and their practice group NYCG have conspired unlawfully with WMC and WCHCC through the mechanism of the Professional Services Agreement to prevent plaintiffs from expanding their practice and providing optimal service to their patients. *See* Complaint, ¶ 31 *et seq*. The Professional Services Agreement (a copy of which is annexed as Exhibit B to the Menaker Aff.) is cited in and forms the basis of the Fourteenth and Fifteenth Affirmative Defenses of the First Amended Answer. Accordingly, it may properly be considered on a motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Section 2 of the Professional Services Agreement, which constitutes a binding admission against defendants, makes clear the inapplicability of the Copperweld defense here. It provides in relevant part:

> 2. **Independent Contractor Status.** The Company and its Physicians shall be independent contractors and not employees of the Hospital and shall not hold itself or themselves out as employees of the Hospital.
>
> \* \* \*
>
> 2.4    Nothing in this Agreement is intended, nor shall be construed, to create an employer/employee, a partnership, or a joint venture relationship between the Hospital and the Company or its Physicians, and neither the Company nor any Physician will be constituted the agent of Hospital by virtue of the terms of this Agreement.

Accordingly, the Ninth Affirmative Defense should be dismissed.

### VI.  The Twelfth Affirmative Defense Should Be Dismissed Because Plaintiffs' Antitrust Claims Are Not Conclusory.

The Twelfth Affirmative Defense states that "plaintiffs' antitrust claims are conclusory." The controlling case with regard to pleading standards is *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007). There Judge Newman discusses at length the proper application of the Supreme Court's recent sphinxian opinion in *Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The complaint in *Twombly* contained bare-bones allegations of an antitrust conspiracy plaintiffs sought to infer from defendants' parallel conduct. The *Twombly* complaint, thus, stands in stark contrast to the Complaint here which, by contrast, contains detailed allegations of a Sherman Act §1 violation based on an express, overt agreement among defendants. Complaint, ¶¶ 31 *et seq.*

In *Iqbal*, the Second Circuit summarized its understanding of *Twombly*, as follows:

> After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible "plausibility standard," which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.

*Iqbal*, 490 F.3d at 157-58 (emphasis in original).

The Complaint here easily meets the "plausibility" standard articulated in *Twombly* and *Iqbal*. As noted, it contains allegations not of a sketchy agreement inferred solely from defendants' parallel conduct, but of an express, written agreement. Complaint, ¶ 31. Moreover, the Complaint describes in detail specific acts undertaken by defendants to carry out their unlawful agreement, such as their rejection of plaintiffs' attempt to expand their practice at WMC by hiring physician's assistant Michael Evans. *See* Complaint, ¶¶ 38-46. In addition, the objective of the conspiracy, as alleged in the Complaint, is a classic, not merely "plausible," objective of an unlawful agreement in restraint of trade: to reduce or eliminate competition to defendants Lansman, Spielvogel and NYCG from plaintiffs and other direct competitors. *Id.*, ¶¶ 54 and 55. Accordingly, the Twelfth Affirmative Defense should be dismissed.

### VII. The Fourteenth and Fifteenth Affirmative Defenses, Based on the Existence of Documentary Evidence, Is without Merit.

In their Fourteenth and Fifteenth Affirmative Defenses, defendants allege the complaint should be "barred due to the existence of documentary evidence, i.e., the Professional Services Agreement." An affirmative defense of "documentary evidence" merely states a conclusion of law and is insufficient without supporting factual data. *Glenesk v. Guidance Realty Corp.*, 36 A.D.2d 852, 853, 321 N.Y.S.2d 685, 687 (2d Dept. 1971). Moreover, a defense based on "documentary evidence" is valid only if it "resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim." *Teitler v. Max*

-14-

*J. Pollack & Sons*, 288 A.D.2d 302, 733 N.Y.S.2d 122 (2d Dept. 2001); N.Y. C.P.L.R.

3211(a)(1). Given the insufficiency of defendants' pleading, it is unclear how they think the

Professional Services Agreement absolves them of liability. It does not purport to release

defendants as, indeed, it could not since plaintiffs are not parties thereto. On the contrary,

it is plainly an agreement among defendants to restrict plaintiffs' ability to serve their patients

at WMC. The question put into issue by the Complaint is whether this restrictive agreement

constitutes an unreasonable restraint of trade -- a question which requires a fact-based

analysis of its impact on competition in the relevant markets. *See, e.g., Continental T.V., Inc.

v. GTE Sylvania Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557 (1977)("the factfinder weighs all

of the circumstances of a case in deciding whether a restrictive practice should be

prohibited"). The Fourteenth and Fifteenth Affirmative Defenses of "documentary evidence"

are, accordingly, without merit and should be dismissed.

### VIII.    The Nineteenth and Twentieth Affirmative Defenses, Based on the Failure to State a Claim for Tortious Interference with Prospective Business, Is without Merit.

In their Nineteenth and Twentieth Affirmative Defenses, defendants allege the

complaint fails to state a claim for interference with prospective business relations because

plaintiffs have not adequately alleged "that but for defendants' alleged conduct, plaintiffs

would have treated a greater number of patients" and "that defendants' purported conduct

was undertaken with the sole purpose of harming plaintiffs." To maintain an action for

tortious interference with business relations, a plaintiff must allege that: "(1) there is a

business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Mahmud v. Kaufmann*, 454 F.Supp.2d 150, 161 (S.D.N.Y. 2006) (*quoting Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108-109 (2d Cir. 1997)).

### a.    Plaintiffs Have Properly Alleged Causation.

Defendants are simply wrong that plaintiffs have failed to allege a causal connection between their injuries and defendants' wrongful acts. The Complaint could not be any clearer on this point. It asserts that defendants "wrongfully interfered with plaintiffs' ability to expand and enhance their services, thereby preventing them from serving the full volume of patient needs that have needed to be served since 2005 and that will continue to grow and exist in the foreseeable future." Complaint, ¶ 71. *See also* Complaint, ¶ 46 ("Defendants' restraint on competition wrongfully undermines plaintiffs' ability to meet growing demand for their services and enhance the quality of patient care"). Indeed, the Complaint specifically alleges that the defendants limited plaintiffs' ability to provide cardiothoracic surgical services to their patients hospitalized at WMC by wrongfully rejecting the application of physician's assistant Michael Evans and by limiting their access to the operating room, required medical staff and equipment. *Id.* ¶ 55(b-c). Furthermore, the Complaint clearly alleges that Evans' application was rejected not for any legitimate reason

(like lack of professional qualifications), but solely as a result of defendants' restrictive agreement. *See* Complaint ¶¶ 38-46 and Exhibit A thereto ("Your application cannot be processed because there is an existing exclusive agreement with The New York Cardiothoracic Group, within the Section of Cardio-Thoracic Surgery"). Plaintiffs have more than met the pleading requirement to state a cause of action for tortious interference with their prospective business relations and, accordingly, defendants' Nineteenth Affirmative Defense should be dismissed.

### b. Plaintiffs Need Not Establish That Defendants' Sole Intent Was To Harm Plaintiffs.

Defendants assert in their Twentieth Affirmative Defense that plaintiffs "have not adequately alleged that defendants' purported conduct was undertaken with the sole purpose of harming plaintiffs." But defendants' formulation of the legal standard is inaccurate. As the court held in *Mahmud*, 454 F.Supp.2d 150, 161, plaintiffs may satisfy their pleading obligations by alleging that defendants used "dishonest, unfair, or improper means." The Complaint alleges that the improper means used here by defendants to restrict plaintiffs' ability to expand their practice was a restrictive agreement entered into in violation of the antitrust laws. Complaint, ¶ 46. And in any event, plaintiffs' allegations of purpose are more than sufficient. *See, e.g.* Complaint ¶ 55. Therefore, defendants' Twentieth Affirmative Defense is without merit and should be dismissed.

-17-

### IX. The Twenty-Second and Twenty-Third Affirmative Defenses, Based on the Failure To Exhaust All Remedies with the Public Health Council, Is without Merit.

In their Twenty-Second and Twenty-Third Affirmative Defenses, defendants allege that the Complaint should be "barred to the extent that plaintiffs failed to exhaust all necessary administrative remedies and procedures prior to the commencement of this action" and "dismissed on grounds of primary jurisdiction because plaintiffs failed to commence and exhaust their administrative remedies with the New York State Public Health Council."

### a. Plaintiffs Need Not Exhaust All Necessary Administrative Remedies.

Defendants' extraordinary position - that plaintiffs must first seek relief before a state administrative body before being allowed to commence an action in federal court for a violation of the Sherman Act - is completely without merit. There is nothing in the Clayton Act that requires plaintiffs to exhaust any administrative remedies -- be they federal or state -- before exercising their right to seek judicial relief for a violation of the Sherman Act. Nor is there any such requirement antecedent to bringing a lawsuit for violation of the state antitrust law, the Donnelly Act. More generally, it is clear under New York law that where, as here, a physician seeks monetary relief for claims sounding in contract, he or she is not obligated to seek an administrative remedy, but, on the contrary, is "free to pursue his/her other rights or remedies, including direct access to court proceedings." *Tsadik v. Beth Israel Medical Center,* 13 Misc.3d 359, 364, 822 N.Y.S.2d 395, 398-99 (Sup. Ct. New York Co.

-18-

2006). *See also Chime v. Sicuranza*, 221 A.D.2d 401, 633 N.Y.S.2d 536 (2nd Dept. 1995) (no administrative proceeding is required before a physician is permitted to seek judicial redress for claims of breach of contract and intentional interference with contractual relations) and *Gelbard v. Genesee Hosp.*, 211 A.D.2d 159, 162, 626 N.Y.S.2d 894, 896 *leave to appeal granted* 86 N.Y.2d 705, 632 N.Y.S.2d 498, 656 N.E.2d 597, *affirmed* 87 N.Y.2d 691, 642 N.Y.S.2d 178, 664 N.E.2d 1240 (4th Dept. 1995)(physician's contractual rights "not within the jurisdiction of the Public Health Council").

> **b.    Plaintiffs Need Not Commence and Exhaust Administrative Remedies with the Public Health Council.**

In addition, a physician need not seek administrative redress from the Public Health Council for claims unrelated to termination or restriction of his/her professional credentials because of questions about his/her competency or ethics. *Tsadik v. Beth Israel Medical Center, supra*, 822 N.Y.S.2d 395. *See also Fritz v. Huntington Hospital*, 39 N.Y.2d 339, 348, 384 N.Y.S.2d 92, 98-99 (1976).    That rule makes eminent good sense since the Public Health Council has no expertise with regard to commercial disputes, like those here sounding in antitrust law and contract.

Defendants' assertion that plaintiffs must first resort to state administrative proceedings before seeking redress from this Court are unfounded and contrary to law. Accordingly, the Twenty-Second and Twenty-Third Affirmative Defenses should be dismissed.

### X.    The Twenty-Sixth Affirmative Defense, Based on Waiver, Release, Estoppel and Laches, Is Improperly Pleaded And Without Merit.

The Twenty-Sixth Affirmative Defense states in its entirety that "plaintiffs' claims are barred, in whole or in part, by the principles of waiver, release, estoppel, and laches." This general, boilerplate allegation is devoid of the requisite factual detail to put plaintiffs on notice as to what defendants are claiming, and defendants' Twenty-Sixth Affirmative Defense should be dismissed.

### a.    Waiver.

Under New York law, defendants must specifically plead the facts and circumstances relied on as constituting waiver. Affirmative defenses stating "barred by waiver and estoppel" must be stricken because they are "totally bereft of factual data," "fatally deficient," and "merely plead conclusions of law." *Bentivegna v. Meenan Oil Co., Inc.,* 126 A.D.2d 506, 510 N.Y.S.2d 626 (2d Dept. 1987) (quoting *Glenesk v. Guidance Realty Corp.*, 36 A.D.2d 852, 853, 321 N.Y.S.2d 685, 687 (2d Dept. 1971). As the *Glenesk* court stated: "A proper pleading of waiver requires allegations, *inter alia*, that the adverse party was aware of certain facts and, being aware of them, elected not to take advantage of them." *Glenesk, supra*, 321 N.Y.S.2d at 687. *See also RKO Century Warner Theatres, Inc. v. Morris Industrial Builders*, 1997 WL 602495 (S.D.N.Y. 1997).

-20-

**b.    Release.**

"A general release is based on the assumption that there was a prior valid agreement out of the substantive provisions of which certain asserted claims had arisen, and manifests a subsequent agreement pursuant to which those claims have been given up and released." *Schlaifer v. Sedlow*, 51 N.Y.2d 181, 185, 433 N.Y.S.2d 67, 69 (1980). Defendants' conclusory allegation identifies no prior agreement pursuant to which plaintiffs are purported to have released defendants from the claims asserted in the Complaint and, accordingly, is insufficient.

**c.    Estoppel.**

To effectively plead estoppel, "facts should be alleged showing in what manner and to what extent, defendant relied on plaintiff's inconsistent conduct and was prejudiced thereby." *Glenesk, supra*, 36 A.D.2d at 853, 321 N.Y.S.2d at 687.  Delay will not lead to an estoppel where the person was not prejudiced by the delay. *Shields v. School of Law, Hofstra University*, 77 A.D.2d 867, 868, 431 N.Y.S.2d 60, 62 (2d Dept. 1980).  Again, defendants have merely pleaded a general allegation of estoppel, failing to include supporting factual information to support their defense.  Pleading "the word 'estoppel' without more is not a sufficient statement of a defense and, in any event, 'it is highly unlikely that estoppel can be readily allowed to defeat antitrust claims.'" *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 841 (S.D.N.Y. 1988)(citations omitted).

### d.     Laches.

A laches defense should be dismissed as "deficient if it fails to include allegations showing not only a delay, but also injury, change of position, intervention of equities, loss of evidence, or other disadvantage resulting from such delay." *RKO Century Warner Theatres, Inc., supra*, 1997 WL 602495, at *2. Defendants' pleading contains none of the requisite allegations.  Moreover, "[t]he doctrine of laches does not normally apply to antitrust claims." *Telectronics, supra*, 687 F.Supp. at 841.

### XI.     The Twenty-Ninth Affirmative Defense Is without Merit.

Defendants allege that plaintiffs are not entitled to treble damages.  However, 15 U.S.C. §15(a) and N.Y. General Business Law §340 (5) clearly provide for automatic recovery of treble damages for violation of federal or state antitrust laws. *See e. g. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 218 (2nd Cir. 2004)(private right of action for treble damages conferred by §4 of the Clayton Act, 15 U.S.C. §15(a)).  As the Supreme Court stated in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46, 97 S.Ct. 2061, 2074-75 (1977): treble-damage actions are an "important weapon of antitrust enforcement" and serve "the legislative purpose in creating a group of 'private attorneys general.'" *See also Pfizer, Inc. v. Government of India*, 434 U.S. 308, 315(1978) ("American consumers are benefited by the maximum deterrent effect of treble damages upon all potential violators").  Defendants' Twenty-Ninth Affirmative Defense should, therefore, be dismissed.

## CONCLUSION

For the reasons stated above, the following affirmative defenses should be dismissed from defendants' First Amended Answer with Jury Demand: First, Fifth, Sixth, Seventh, Eighth, Ninth, Twelfth, Fourteenth, Fifteenth, Nineteenth, Twentieth, Twenty-Second, Twenty-Third, Twenty-Sixth and Twenty-Ninth.

Dated: New York New York
      February 1, 2008

                Respectfully submitted,

                MENAKER & HERRMANN LLP

                By: _Richard G. Menaker_____

                    Richard G. Menaker
                    (RM 4716)

                10 East 40th Street
                New York, New York 10016
                (212) 545-1900
                *Attorneys for Plaintiffs*