# EXHIBIT 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

| | |
|---|---|
| CARDIAC SURGERY GROUP, P.C., <br><br>                  Plaintiff, <br><br>   -against- <br><br>MOHAN R. SARABU, M.D., <br><br>                  Defendant. | Index No.: <br><br>**AFFIDAVIT OF ARLEN G. FLEISHER, M.D. IN SUPPORT OF ORDER TO SHOW CAUSE** |

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF WESTCHESTER  )

ARLEN G. FLEISHER, being duly sworn, deposes and says:

1. I am a Director and Vice President of Plaintiff Cardiac Surgery Group, P.C. ("CSG"). I have been a member of CSG since 1990. I make this affidavit based upon personal knowledge unless otherwise indicated.

2. Plaintiff CSG is a New York professional corporation organized under the laws of New York with its principal place of business in Valhalla, New York. The current members of the partnership are George E. Reed, M.D., Richard A. Moggio, M.D., Rocco Lafaro, M.D., Howard Axelrod, M.D. and myself. CSG was formed in 1988 and is in the business of performing all aspects of cardiac surgery.

3. Westchester Medical Center is among a limited group of hospitals in this area licensed to offer cardiac surgery services. CSG is the only full time cardiac surgery group with privileges to perform all aspects of cardiac surgery at Westchester Medical Center.

4. CSG is the only practice whose members are permitted under the Federated Faculty Practice Plan bylaws to perform cardiac surgery at Westchester Medical Center.

5. On or about November 28, 2001 CSG consisted of the individuals identified above, together with Defendant Mohan Sarabu, M.D. ("Sarabu").

6. Upon information and belief, on or about November 28, 2001, Sarabu executed a Partner Employment Contract with CSG (the "Contract"). Attached hereto as Exhibit 1 is a true and accurate copy of the Contract dated November 28, 2001.

7. Section 2 of the Contract provides that the term of the Contract is for one year from the date of its execution, and that it shall be renewed annually on the anniversary date of the Contract unless and until terminated as provided in the Contract.

8. Section 4 of the Contract specifically provides as a term of Sarabu's employment as follows: "Employee agrees to serve the Corporation faithfully and to the best of his ability and shall devote his entire professional time attention and energies to the business of the Corporation. He shall not, during the term of this Agreement, without the written consent of the Board of Directors, be engaged in any other business or professional activity (other than as a passive investor), whether or not such business or professional activity is pursued for gain, profit or other pecuniary advantage."

9. Section 11(a) of the Contract specifically provides as a condition of Sarabu's employment as follows: "Employee agrees that he shall not for a period of twenty-four (24) months following termination of Employment, without the written consent of the Board of Directors of the Corporation, engage directly or indirectly, as principal, agent, employee, or otherwise in the practice of medicine specializing in whole or in part in cardiac surgery at any hospital within the market area of the Westchester Medical Center Heart Surgery Program,

which incorporates: the Hudson Valley of New York (including the New York State counties of Westchester, Putnam, Duchess, Rockland, Orange, Sullivan and Ulster); Bergen County, New Jersey; Fairfield County, Connecticut, and the Bronx borough of the City of New York" (the "Restrictive Covenant").

10. Section 11(b) of the Contract specifically provides as a condition of Sarabu's employment as follows: "Employee further agrees to immediately resign his privileges relating to cardiac surgery at the Westchester Medical Center upon termination of employment."

11. Section 11(c) of the Contract specifically provides as a condition of Sarabu's employment as follows: "Employee expressly agrees that the restrictions of this paragraph are reasonable and fair."

12. While section 15 of the Contract provides that disputes arising out of the Contract be arbitrated, section 11(d) of the Contract specifically provides as a condition of Sarabu's employment as follows: "It is agreed that in the event of a breach or threatened breach of this Restrictive Covenant by Employee, the Corporation shall have the right to secure an order from any court of competent jurisdiction enjoining any violation, threatened or actual, of this restrictive covenant."

13. Section 11(e) of the Contract specifically provides as a condition of Sarabu's employment as follows: "The provisions of this paragraph shall survive expiration, termination or other cancellation of this Agreement."

14. Section 11(f) of the Contract specifically provides as a condition of Sarabu's employment as follows: "Employee agrees that the covenants in this Section are independent covenants and that the Employee shall not be excused from compliance with these covenants by

3

reason of any breach by the Corporation of this Agreement's terms and conditions or because of any other acts or omissions of the Corporation."

15. During Sarabu's association with CSG as a Partner, Sarabu treated CSG's patients in his capacity as a cardiac surgeon.

16. Upon information and belief, beginning in or about March 2003, defendant Sarabu began to direct patient referrals to himself by developing independent patterns of communication with CSG referring physicians. Sarabu secured these patient referrals to the exclusion of other CSG members. Sarabu did so while still a member, shareholder and President of CSG. During that time, Sarabu received compensation from CSG, and operated out of CSG's offices at the Westchester Medical Center and New Windsor, New York.

17. Upon information and belief, in or around March 2003, Sarabu met with Westchester Medical Center representatives and the Chairman/Director of Surgery of Westchester Medical Center and discussed the possibility that he would separate from CSG.

18. Also, during that period, Sarabu limited himself to performing routine adult cardiac surgeries while the other members of CSG performed essential administrative and other non-income producing activities. In addition, the remaining members provided clinical support for the cardiac transplant and pediatric cardiac surgery programs without assistance from Sarabu. These services were mandated by the Westchester Medical Center.

19. CSG had also set up a satellite office in New Windsor, New York to which Sarabu was assigned as a representative of CSG. Sarabu used this opportunity provided by CSG to further develop the referral sources for his personal practice. Specifically, Sarabu declined to distribute referrals among the other members of CSG as had been the practice since the cardiac

4

surgical service was established. The practice of distributing referrals was in place in order to provide the most efficient and comprehensive coverage for patient care.

20. On or about December 29, 2003 CSG received a letter from Sarabu notifying CSG that he was terminating his relationship with CSG effective December 31, 2003, that commencing on January 1, 2004 he would no longer be practicing with CSG and that he would have no further association with CSG. Attached hereto as Exhibit 2 is a true and accurate copy of the letter that CSG received from Sarabu.

21. At the time that CSG received Sarabu's letter, his Contract with CSG was still in effect.

22. Both before and immediately after receipt of Sarabu's letter, CSG attempted with and without the hospital's representatives, to negotiate an amicable resolution of this dispute without resort to litigation.

23. Specifically, the parties discussed ways to accommodate Sarabu's demands in order to preserve the integrity of CSG and in order to allow CSG to continue to be the single full service provider of all aspects of cardiac surgery at Westchester Medical Center. CSG attempted to negotiate with Sarabu in the belief that its financial viability in a very competitive cardiac surgery market area depended upon preserving the integrity of the group. In addition, a single full service cardiac care provider such as CSG provided the most benefit to the hospital in affording comprehensive coverage of patient care, which results in a decreased length of stay and more efficient use of hospital resources.

24. CSG also made this attempt at the urging of administrators of the Westchester Medical Center, who were concerned about the effect of litigation upon the financial and administrative welfare of the Westchester Medical Center. CSG honored the administration's

5

request in order that CSG not contribute to financial and administrative problems that Westchester Medical Center was undergoing at the time. However, Sarabu was not amenable to negotiation with respect to his demands.

25. Due to the enormous financial damage CSG and injury to its reputation that CSG has suffered from Sarabu's breach of the Restrictive Covenant Section 11 of the Contract, CSG has no recourse but to seek court intervention to enforce the Restrictive Covenant set forth in the Contract.

26. Upon information and belief, since January 1, 2004 Sarabu has not resigned his privileges relating to cardiac surgery at the Westchester Medical Center. Sarabu continues to practice as a cardiac surgeon at the Westchester Medical Center, performing cardiac surgeries upon patients virtually on a daily basis.

27. Sarabu, moreover, continues to maintain his office within CSG's offices at the Westchester Medical Center and at New Windsor, New York and continues to have unlimited access to CSG's patient records.

28. Furthermore, it is my understanding that Sarabu has used and continues to use CSG's computer and patient records in developing his separate cardiac surgery practice.

29. Based upon my personal experience as a cardiac surgeon at Westchester Medical Center for the past fourteen years, the patients that are referred to the Westchester Medical Center Heart Surgery Program reside within the Market Area as that term is defined in Exhibit 1.

30. Sarabu's practice of cardiac surgery at the Westchester Medical Center has resulted in significant loss of opportunities otherwise available to CSG. Patients referred to the Westchester Medical Center are sent there because the Westchester Medical Center is one of a limited number of hospitals in this area licensed to offer cardiac surgery services, and because of

the longstanding reputation of CSG. Specifically, Westchester Medical Center is one of only three hospitals within the Hudson Valley and Bronx County licensed to offer these services.

31. In contrast, New York County, which is excluded from the Market Area, has numerous hospitals licensed to offer these services.

32. It is impossible to detect all of the instances where defendant Sarabu has operated on CSG patients in violation of the Contract, and upon information and belief, Sarabu continues to cultivate a separate relationship with the referring physicians in an effort to secure patient referrals for his own separate practice. Accordingly, CSG cannot measure its damages by reason of such violations.

33. In addition, Sarabu's practice of cardiac surgery at the Westchester Medical Center has injured CSG's reputation. CSG is the only approved practice whose members are permitted under the Federated Faculty Practice Plan bylaws to perform all aspects of cardiac surgery at Westchester Medical Center. The existence of Sarabu's separate practice within the very hospital that houses CSG creates an ambiguity as to the composition of CSG that will confuse the patient population from which CSG derives its revenue. Moreover, Sarabu is currently performing cardiac surgery without oversight by CSG.

34. CSG does not seek to deprive Sarabu's existing patients of his services and, accordingly, CSG does not seek to enjoin Sarabu from treating existing patients.

35. CSG's reputation will suffer irreparably unless Sarabu is enjoined from competing with CSG in violation of the Restrictive Covenant.

36. Attached hereto as Exhibit 3 is a copy of the Summons and Verified Complaint filed in conjunction herewith.

_____
Arlen G. Fleisher, M.D.

Sworn to before me this
26th day of April, 2004

_____
Notary Public

KERRY F. CUNNINGHAM
NOTARY PUBLIC, State of New York
No. 02CU6074154
Qualified in Westchester County
Commission Expires May 13, 2006

8