UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROCCO J. LAFARO, M.D.,  :  Case No. 07 Civ. 7984 (SCR)
ARLEN G. FLEISHER, M.D.,  :
and CARDIAC SURGERY GROUP, P.C.,  :

                  Plaintiff,  :

    -against-  :

NEW YORK CARDIOTHORACIC  :
GROUP, PLLC, STEVEN L. LANSMAN, M.D.,  :
DAVID SPIELVOGEL, M.D., WESTCHESTER  :
COUNTY HEALTH CARE CORPORATION  :
and WESTCHESTER MEDICAL CENTER,  :

                  Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO STRIKE AFFIRMATIVE DEFENSES

*Attorneys for Defendants*

Jordy Rabinowitz (JR-6558)
Senior Associate General Counsel
WESTCHESTER COUNTY HEALTH CARE CORPORATION
Executive Offices – Taylor Care Center
Valhalla, New York  10595
(914) 493-2101

Leonard M. Rosenberg (LR-6910)
Justin M. Vogel (JV-5839)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200

# Table of Contents

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .............................................................................1

BACKGROUND ......................................................................................................4

ARGUMENT ...........................................................................................................6

POINT I

      PLAINTIFFS FAIL TO MEET THE BURDEN OF PROOF REQUIRED
      OF THEM ON A MOTION TO STRIKE AFFIRMATIVE DEFENSES ........................6

      A.     The Rule 12(f) Standard................................................................6

      B.     Plaintiffs Do Not Meet Their Burden ...................................................7

POINT II

      PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THE
      AFFIRMATIVE DEFENSES ARE DIRECTLY RELATED TO
      PLAINTIFFS' CLAIMS AND RAISE ISSUES OF LAW AND FACT ............................9

      A.     Defendants' First Affirmative Defense Is Valid....................................................9

      B.     Defendants' Fifth, Sixth, Seventh And Eighth Affirmative
            Defenses Should Not Be Dismissed Because They Are In Direct
            Relation To Plaintiffs' Antitrust Claim, Raise Issues Of Fact That
            Require Discovery, And Are Legally Sufficient....................................................10

            1.     Defendants' Fifth, Sixth, Seventh And Eighth Affirmative
                 Defenses Raise Issues Of Fact and are Directly Related to
                 Plaintiffs' Antitrust Claim.........................................................10

            2.     Defendants' Seventh Affirmative Defense Is Legally
                 Sufficient...............................................................................12

            3.     Plaintiffs' Seeking To Strike Defendants' Ninth
                 Affirmative Defense, *i.e.,* The Copperweld Defense  Is
                 Frivolous Because Defendants Waived That Defense................................13

            4.     Defendants' Twelfth Affirmative Defense Should Not Be
                 Dismissed Because Plaintiffs' Antitrust Claim Is
                 Conclusory .............................................................................13

838837v.7

## Table of Contents (cont'd)

Page

    5.    Defendants' Fourteenth And Fifteenth Affirmative
Defenses, Based on Documentary Evidence, Are Valid
Defenses ..................................................................................................15

    6.    Defendants' Nineteenth And Twentieth Affirmative
Defenses Are Valid Because Plaintiffs Do Not Adequately
Plead A Claim For Tortious Interference With Prospective
Business Relations ..................................................................................16

    7.    Defendants' Twenty-Second And Twenty-Third
Affirmative Defenses, Relating To Plaintiffs' Failure To
Appear Before The Public Health Council, Are Valid
Defenses Because It Is Unclear From The Complaint
Whether Plaintiffs Claims Arise From Alleged Restrictions
on their Privileges ..................................................................................17

    8.    Defendants' Twenty-Sixth Affirmative Defense Alleging
That Plaintiffs' Claims Are Barred By The Principles Of
Waiver, Release, Estoppel And *Laches* Is A Valid
Affirmative Defense................................................................................19

    9.    Dismissal Of Defendants' Twenty-Ninth Affirmative
Defense is Premature ..............................................................................20

POINT III

    PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THEY
MISCONSTRUE THE PURPOSE OF AN AFFIRMATIVE DEFENSE.........................21

CONCLUSION................................................................................................................23

838837v.7

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Advanced Marine Technologies, Inc. v. Burnham Securities, Inc.,*
  16 F. Supp.2d 375 (S.D.N.Y. 1998)................................................................16, 17

*Barrett v. U.S. Banknote Corp.,*
  1992 WL 232055, September 2, 1992 (S.D.N.Y.)......................................14

*Bell Atlantic Corp., et al. v. Twombly, et al.,*
  127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................................14

*City of New York v. New York Pizza Development, LLC.,*
  2006 WL 2850237 *3 (S.D.N.Y. 2006) ................................................6, 19

*Colon ex rel. Molina v. BIC USA, Inc.,*
  136 F. Supp.2d 196 (S.D.N.Y. 2000)........................................................21

*Drug Mart Pharmacy Corp v. American Home Products Corp.,*
  2007 WL 4526618, December 20, 2007 (E.D.N.Y.) .............................20

*Eastman Kodak Co. v. Image Technical Services, Inc.,*
  504 U.S. 451, 119 L.Ed.2d 265 (1992) ...................................................10

*EEOC v. Bay Ridge Toyota, Inc.,*
  327 F. Supp.2d 167 (E.D.N.Y. 2004) .......................................................7

*Estee Lauder, Inc. v. Fragrance Counter, Inc.,*
  189 F.R.D. 269 (S.D.N.Y. 1999) ...........................................................7, 16

*Federal Nat. Mortg Ass'n v. Olympia Mortg. Corp.*
  2007 WL 3077045, October 22, 2007 (E.D.N.Y.).................................11

*In re Medical Film Antitrust Litigation,*
  946 F. Supp 209 (E.D.N.Y. 1996) ..........................................................12

*Iqbal v. Hasty,*
  490 F.3d 143 (2d Cir. 2007).....................................................................13

*J. Truett Payne Co., Inc. v. Chrysler Motor Corp.,*
  451 U.S. 557, 68 L.Ed.2d 442 (1981).....................................................20

838837v.7

*Johnson v. Nyack Hosp.,*
    964 F.2d 116 (2d Cir. 1992)..................................................................................18

*Salcer v. Envicon Equities Corp.,*
    744 F.2d 935 (2d Cir. 1984), *vacated on other grounds,* 478 U.S. 1015 (1986)............ passim

*SEC v. McMaskey,*
    56 F. Supp.2d 323 (S.D.N.Y. 1999)........................................................................7

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447, 122 L.Ed.2d 247 (1993) ...................................................................10

*Todorov v. DCH Healthcare Authority,*
    921 F.2d 1438 (11th Cir. 1991) .............................................................................10

*US Airways Group, Inc. v. British Airways PLC,*
    989 F. Supp 482 (S.D.N.Y. 1997) .........................................................................14

*Williams v. Jader Fuel Co., Inc.,*
    944 F.2d 1388 (7th Cir. 1991) ..............................................................................11

**STATE CASES**

*Dana Distributors, Inc. v. Crown Imports, LLC,*
    --- N.Y.S.2d ---, 2008 WL 458577 ........................................................................19

**FEDERAL STATUTES**

15 U.S.C. § 15(a) ....................................................................................................20

**RULES**

Fed. R. Civ. Proc. Rule 11(b) and (c) ...........................................................................5

Fed. R. Civ. Proc. Rule 12(f) ........................................................................... passim

838837v.7

## PRELIMINARY STATEMENT

Defendants submit this Memorandum of Law in opposition to Plaintiffs' motion, brought pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, which seeks to strike fifteen (15) affirmative defenses interposed in Defendants' Amended Answer with Jury Demand dated November 19, 2007 (the "Answer") before the parties engage in discovery. As explained in detail below, Plaintiffs' motion is shockingly frivolous and a waste of judicial resources.

On February 1, 2008, Defendants filed a motion for judgment on the pleadings wherein Defendants establish that Plaintiffs' federal antitrust claims should be dismissed based on defenses alleged in the Answer. Specifically, the motion establishes that: (i) Defendants are immune from antitrust liability under the State Action Doctrine, (ii) Defendants are immune from antitrust damages under the Local Government Antitrust Act, and (iii) Plaintiffs lack standing because they do not suffer from antitrust injury and are not efficient enforcers of the antitrust laws. The analysis of these defenses in Defendants' motion warrants the immediate dismissal of Plaintiffs' federal antitrust claim.[1]

Simultaneously with Defendants' application, Plaintiffs filed their motion seeking to strike the bulk of Defendants' other affirmative defenses. Plaintiffs, however, ignore that the defenses they seek to have dismissed issue a direct challenge to the factual and legal bases of Plaintiffs' claims. Specifically, Plaintiffs contend that the following affirmative defenses should be dismissed:

---

[1]     The remainder of Plaintiffs' claims are state-based and, as argued in the motion on the pleadings, this Court should not exercise supplemental jurisdiction over those claims.

- whether Plaintiffs allege conduct that impacts interstate commerce (Fifth Affirmative Defense);

- whether Plaintiffs allege a relevant geographic market and product market (Sixth Affirmative Defense);

- whether Plaintiffs allege conduct that unreasonably restrains trade in the relevant market (Seventh Affirmative Defense); and

- whether Plaintiffs allege that Defendants have market power in the relevant market (Eighth Affirmative Defense).

Preliminarily, this pre-discovery motion defies common sense. By the motion, Plaintiffs in effect argue that, should this case go forward – and, again, Defendants argue that it should not– Defendants should not be permitted to seek discovery on necessary components of Plaintiffs' antitrust claim. Clearly, this argument ignores that striking these defenses before discovery would be wholly inequitable and prejudicial to Defendants.[2]

Further, this application must also be denied because Plaintiffs fail to meet the stringent burden of proof required on a Rule 12(f) motion. In fact, Plaintiffs do not even mention in their brief the relevant legal standard. Instead, Plaintiffs base their motion solely on semantics as to how each defense is worded, effectively placing form over substance, while at the same time misconstruing the purpose of interposing defenses, *i.e.*, to alert a plaintiff of all relevant defenses that may be raised.

---

[2]    Plaintiffs also seek to strike Defendants' affirmative defenses that challenge the legal and factual basis of Plaintiffs' state-based claims. While the Court will likely decline to exercise supplemental jurisdiction over such claims should the federal antitrust claim be dismissed, Defendants' defenses are legally sufficient and appropriate and should not be stricken at this stage of the litigation.

838837v.7

By way of example, rather than recognizing Defendants' legitimate right to probe the factual elements of Plaintiffs' antitrust allegations – such as geographic scope and market power – Plaintiffs claim that they have "adequately alleged" those elements and thus, conclude that the affirmative defenses are meritless. (*See* Plaintiffs' Memorandum of Law at p. 7-8).

This position, however, overlooks the well-established three-prong test that a movant on a Rule 12(f) motion must meet.[3]  And, as described in detail below, because Plaintiffs do not, and cannot meet their burden, this motion deserves short shrift and should be denied.

---

[3]      Defendants use the term "overlooked" generously.  In fact, Defendants have attempted to persuade Plaintiffs on two occasions that this motion is a waste of judicial and party resources.  Defendants' most recent attempt is its February 8, 2008 letter to Plaintiffs' counsel highlighting the legal standard for a Rule 12(f) motion, pointing out that Plaintiffs fail to either cite or meet this standard, and urging Plaintiffs to withdraw the motion.  By letter dated February 11, 2008, still with only the most oblique and conclusory reference to the 12(f) standard, Plaintiffs refused to withdraw their motion, even that portion of the motion that seeks to strike a defense (the Ninth Affirmative Defense) that Defendants withdrew, by Stipulation, long before Plaintiffs filed this motion!  These letters are attached to this Memorandum.

## BACKGROUND

On December 7, 2007, counsel for all parties appeared before the Court for a pre-motion conference. At that time, Plaintiffs' counsel, Richard G. Menaker, Esq. advised that Plaintiffs intended to move to dismiss affirmative defenses interposed in Defendants' Answer. By letter dated January 3, 2008, Jordy Rabinowitz, Esq., Senior Associate General Counsel for Defendants Westchester County Health Care Corporation and Westchester Medical Center ("WMC"), alerted Plaintiffs' counsel that, in an effort to avoid unnecessary motion practice, Defendants may be willing to voluntarily withdraw some defenses, and asked Mr. Menaker to provide a brief explanation of Plaintiffs' positions regarding the defenses they planned to move against. (*See* Exhibit C to Affidavit of Richard G. Menaker, Esq., sworn to on January 31, 2008, "Menaker Aff.").

Thereafter, on January 9, 2007, Mr. Menaker sent a five-page letter to Defendants' counsel, identifying twenty-three affirmative defenses that Plaintiffs deemed objectionable. (*See* Exhibit E to Menaker Aff.). In response, Mr. Rabinowitz contacted Plaintiffs' counsel and offered to withdraw most of those defenses on the condition that Defendants be allowed to reinstate them should the action continue, and if the defenses were deemed applicable to a later summary judgment motion or at trial. By letter dated January 11, 2008, Mr. Menaker rejected Defendants' proposal and insisted that any withdrawal of defenses "be for the balance of the case." (*See* Exhibit F to Menaker Aff.).

As a consequence, by letter dated January 16, 2008, Mr. Rabinowitz responded, in detail, to each objection set forth in Mr. Menaker's January 9, 2008 letter. At that time, Defendants voluntarily withdrew their First Affirmative Defense (alleging that Plaintiffs' antitrust claims

4

were barred by the applicable statute of limitations)[4], their Ninth Affirmative Defense (the *Copperweld* defense)[5] and their Twenty-Eighth Affirmative Defense. (*See* Exhibit G to the Menaker Aff.). Subsequently, Counsel for all parties entered into a Stipulation dated January 18, 2008 confirming Defendants' withdrawal of those defenses (the "Stipulation"). (*See* Exhibit H to the Menaker Affid.).

In one last attempt to avoid additional motion practice, on February 8, 2008, Mr. Rabinowitz wrote Mr. Menaker, pursuant to Rule 11(b) and (c) of the Federal Rules of Civil Procedure, asking that Plaintiffs withdraw their motion.  Mr. Rabinowitz pointed out that Plaintiffs' did not meet their burden of proof for success on a motion to strike affirmative defenses and that such motions are universally disfavored. (A copy of Mr. Rabinowitz's letter is annexed hereto).  By letter dated February 11, 2008, Plaintiffs refused to withdraw their motion. (A copy of Mr. Menaker's letter is annexed hereto).

---

[4] Defendants did not withdraw this defense as to Plaintiffs' claims in Counts II and III of the Complaint.
[5] Defendants withdrew this defense while reserving the right to reassert it in the event that information provided in discovery or amended pleadings made reinstatement appropriate.  Despite Defendants' withdrawal, Plaintiffs' devote a full three pages of the Memorandum to this defense.

838837v.7

**ARGUMENT**

**POINT I**

**PLAINTIFFS FAIL TO MEET THE BURDEN OF PROOF REQUIRED OF THEM ON A MOTION TO STRIKE AFFIRMATIVE DEFENSES**

Plaintiffs utterly fail to meet the burden of proof required by the federal courts to succeed on a motion to strike affirmative defenses. In fact, Plaintiffs do not even acknowledge that there is a burden or the elements that they must satisfy under Rule 12(f) and the case law.

**A.     The Rule 12(f) Standard**

The Federal Rules of Civil Procedure provide that:

> Within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court May order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.Proc. Rule 12(f).

The Circuit Court of Appeals for the Second Circuit notes that a motion to strike an affirmative defense under Rule 12(f) is "disfavored" and should not be granted prior to discovery. *See Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). To that end, the Courts require a movant to satisfy a three-prong test when seeking to dismiss affirmative defenses. Specifically, the Courts require a plaintiff to establish that: (i) there is no question of fact that might allow the defense to succeed, (ii) there is no substantial question of law that might allow the defense to succeed, and (iii) that the plaintiff will be prejudiced by the inclusion of the defense. *See, City of New York v.*

6

*New York Pizza Development, LLC.*, 2006 WL 2850237 *3 (S.D.N.Y. 2006); *EEOC v. Bay Ridge Toyota, Inc.*, 327 F. Supp.2d 167, 170 (E.D.N.Y. 2004); *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271-72 (S.D.N.Y. 1999); *SEC v. McMaskey*, 56 F. Supp.2d 323, 326 (S.D.N.Y. 1999).

As established by the Court in *Salcer,* a Rule 12(f) motion is not intended to furnish a plaintiff with a pre-discovery challenge of disputed facts, and will be granted prior to discovery **only** if "it appears *to a certainty* that the plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *See Salcer v. Envicon Equities Corp.*, 744 F.2d at 939 (emphasis added); *Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. at 271.

Similarly, the Courts recognize that, even when the facts are not in dispute, a motion to strike affirmative defenses for alleged legal insufficiency should not be granted prior to discovery because a Rule 12(f) motion "was never intended to furnish an opportunity for the determination of disputed and substantial questions of law." *See Salcer v. Envicon Equities Corp.*, 744 F.2d at 939.

## B.    <u>Plaintiffs Do Not Meet Their Burden</u>

Plaintiffs' memorandum of law makes absolutely no mention of their burden on a Rule 12(f) motion. Instead, Plaintiffs make essentially the same argument for each affirmative defense, *i.e.,* that they have "adequately alleged" or are not required to allege the facts at issue.

For example, in points II, III, IV, and VI, of their motion, Plaintiffs do not attempt to show that (i) there are no facts which would allow the defense at issue to succeed; (ii) there is no

question of law which would allow the defense to succeed; or (iii) that they would be prejudiced by the inclusion of the defense at issue. Instead, wholly ignoring this standard, Plaintiffs merely argue that they have met the pleading requirements. While this argument may have been appropriate had Defendants moved to dismiss the complaint for failure to state a claim, it is not the appropriate analysis on Plaintiffs' motion to strike.

Moreover, even had Plaintiffs properly cited the applicable test, it is clear beyond argument that it could not have been met. As detailed in Point II, below, there is no serious dispute that Defendants' affirmative defenses raise issues of fact and law in relation to Plaintiffs' claims. In addition, Plaintiffs cannot seriously allege prejudice by the inclusion of these defenses before engaging in discovery. For these reasons, Plaintiffs' motion should be denied in its entirety.

838837v.7

## POINT II

### PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THE AFFIRMATIVE DEFENSES ARE DIRECTLY RELATED TO PLAINTIFFS' CLAIMS AND RAISE ISSUES OF LAW AND FACT

As noted above, even if Plaintiffs had identified their burden – and they did not even try – Plaintiffs' motion must be denied because the affirmative defenses in question are legally sufficient, are directly related to Plaintiffs' claims and raise issues of fact and law that cannot be decided before discovery. This becomes self- evident from only a cursory review of the defenses in relation to Plaintiffs' allegations. Thus, it is respectfully submitted that in-depth analysis of each defense is unnecessary. Rather, a brief analysis of the merits of the disputed defenses as they relate to this action is appropriate.

### A.    Defendants' First Affirmative Defense Is Valid

Defendants' First Affirmative Defense alleges that "Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations." As a threshold issue, Defendants waived this defense as to Plaintiffs' federal and state antitrust claims via the Stipulation. Plaintiffs now contend that their state-law claims are not time barred.

Initially, dismissal of this defense is premature because if this Court rules in favor of Defendants on their motion on the pleadings, the Court will likely decline to maintain supplemental jurisdiction over the state-based claims against which the First Affirmative Defense is asserted. Moreover, while Plaintiffs style Count II as a breach of contract claim, it is readily apparent that this claim is actually based on an alleged breach of institutional bylaws. Defendants believe that such a claim is barred by the statute of limitation applicable to Article 78 proceedings.

**B.  Defendants' Fifth, Sixth, Seventh And Eighth Affirmative Defenses Should Not Be Dismissed Because They Are In Direct Relation To Plaintiffs' Antitrust Claim, Raise Issues Of Fact That Require Discovery, And Are Legally Sufficient**

**1.  Defendants' Fifth, Sixth, Seventh And Eighth Affirmative Defenses Raise Issues Of Fact and are Directly Related to Plaintiffs' Antitrust Claim**

In an action under the antitrust laws, the Courts examine several factors to determine the validity of an antitrust claim.  These factors include, *inter alia*, whether the plaintiff:  (a) suffered an antitrust injury; (b) is an efficient enforcer of the antitrust laws; (c) can establish the relevant geographic market; (d) can establish that the defendant has market power in the relevant market; and (e) can establish that the defendant's actions had a substantial effect on interstate commerce. *See, generally, Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 122 L.Ed.2d 247 (1993); *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 119 L.Ed.2d 265 (1992); *Todorov v. DCH Healthcare Authority,* 921 F.2d 1438 (11th Cir. 1991).

In this action, Plaintiffs allege that Defendants violated Section 1 of the Sherman Act and provisions of the Clayton Act by entering into an exclusive services agreement whereby Defendant New York Cardiothoracic Group, PLLC, was contracted to be the exclusive provider of cardiothoracic services at WMC.  In defense of this claim, Defendants assert several affirmative defenses that are directly related to Plaintiffs' allegations.  Specifically, Defendants question whether Plaintiffs' allegations:

- "constitute a substantial effect on interstate commerce" (Fifth Affirmative Defense);

- establish "the existence of a proper relevant product market and geographic market in which defendants purported actions unreasonable restrain trade" (Sixth Affirmative Defense);

- establish that Defendants combined or conspired with an intent to unreasonably restrain trade (Seventh Affirmative Defense); and

- establish that "defendants have market power over the relevant market" (Eighth Affirmative Defense).

(*See* Answer at ¶¶ 78-81; Exhibit B to Menaker Affid.).

Under well-established law, affirmative defenses should be stricken if they are so unrelated to claims in the action, that there inclusion could serve only to prejudice the plaintiff's claims. *See Federal Nat. Mortg Ass'n v. Olympia Mortg. Corp.* 2007 WL 3077045, October 22, 2007 (E.D.N.Y.) (striking affirmative defenses that were completely unrelated to plaintiff's claims); *see also, Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388 (7th Cir. 1991) (holding that affirmative defenses which are "inferable from the pleadings" will survive a motion to strike). In this case, Defendants' Fifth, Sixth, Seventh, and Eighth Affirmative Defenses strike at the heart of Plaintiffs' antitrust claim. Accordingly, the defenses are not only "inferable from the pleadings," but raise issues of fact as to Plaintiffs' allegations. Plainly, it is not certain that Plaintiffs will "succeed [on their antitrust claim] despite any state of the facts which could be proved in support of the defense." *See Salcer v. Envicon Equities Corp.*, 744 F.2d at 939.

In support of their motion, Plaintiffs focus solely on the allegations comprising their antitrust claim and argue that Defendants' affirmative defenses should be dismissed because the elements of the claim are "adequately alleged." But, in so doing, Plaintiffs incorrectly ignore the sufficiency of Defendants' affirmative defenses in relation to the claim. The affirmative defenses raise factual issues as to the relevant market and the effect of the exclusive agreement on interstate commerce, as well as Defendants' market power. Accordingly, it can not be said that Plaintiffs will succeed on their claims, *to a certainty*, regardless of the facts adduced during

11

discovery.   Therefore, Defendants' Fifth, Sixth, Seventh, and Eighth Affirmative Defenses should not be dismissed.

### 2.   Defendants' Seventh Affirmative Defense Is Legally Sufficient

In their motion, Plaintiffs argue that Defendants' Seventh Affirmative Defense (that Plaintiffs have not "adequately alleged that the Defendants combined or conspired with an intent to unreasonably restrain trade") is legally insufficient because "there is ... no separate pleading requirement of intent with respect to a violation of Section 1 of the Sherman Act."   (*See* Plaintiffs' Memorandum of Law at p. 10).   Plaintiffs' argument is incorrect.   *See In re Medical Film Antitrust Litigation*, 946 F. Supp 209 (E.D.N.Y. 1996).

In *In re Medical*, the District Court provided an analysis of the elements of a cause of action under Section 1 of the Sherman Act.   The Court determined that a plaintiff must establish the defendant's intent to unreasonably restrain trade if a *per se* violation of the Statute is not alleged:

> In order to establish a claim under Section 1 [of the Sherman Act], a plaintiff must be able to show:  (1) concerted action (2) by two or more persons (3) which unreasonably restrains trade.   Such concerted action or agreement unreasonably restrains interstate of foreign trade or commerce ... if (1) *a specific intent to create an unreasonable restraint of trade is found* or (2) the restraint constitutes a per se violation of the statute.

*See id* at 215.

In this case, Plaintiffs do not allege that Defendants' purported conduct is a *per se* violation of the Sherman Act.   Therefore, they are required to allege that the Defendants intended to unreasonably restrain trade.   Plaintiffs did not so plead.   In light of the above, Defendants' Seventh Affirmative Defense is legally sufficient and should not be dismissed, especially when a

12

"motion to strike ... was never intended to furnish an opportunity for the determination of disputed ... questions of law." *See Salcer v. Envicon Equities Corp.*, 744 F.2d at 939.

### 3. Plaintiffs' Seeking To Strike Defendants' Ninth Affirmative Defense, *i.e.*, The *Copperweld* Defense Is Frivolous Because Defendants Waived That Defense

Incredibly, Plaintiffs' devote more than three pages in their memorandum of law arguing that Defendants' Ninth Affirmative Defense, the so-called *Copperweld* defense, should be dismissed even though Defendants' agreed to waive that defense. (*See* Stipulation, Exhibit H to Menaker Aff.). Although Defendants reserved their right to "reinstate that defense in the event that information provided in discovery or amended pleadings makes reinstatement appropriate," since the parties have not engaged in discovery, Plaintiffs' seeking to have that defense dismissed is premature and puzzling at best, and highlights the frivolous nature of this motion.

### 4. Defendants' Twelfth Affirmative Defense Should Not Be Dismissed Because Plaintiffs' Antitrust Claim Is Conclusory

In Section VI of their memorandum of law, Plaintiffs argue that Defendants' Twelfth Affirmative Defense – that Plaintiffs' antitrust claims are conclusory – should be stricken. In support of their position, Plaintiffs' argue that the allegations which make up their antitrust claim meets the "plausibility" standard discussed by the court in *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) which requires the pleader to "amplify" a claim with factual allegations. Plaintiffs then point to certain paragraphs of their complaint which they claim satisfies the "plausibility" standard in relation to their antitrust claim.

The *Iqbal* case, however, does not deal with the pleading requirements for an antitrust claim but rather, focuses on pleading requirements in general. In fact, the Courts are clear that in

838837v.7

the context of a federal antitrust claim, more that mere "plausibility" is required. In fact, in the recent United States Supreme Court decision of *Bell Atlantic Corp., et al. v. Twombly, et al.,* 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a decision analyzed in *Iqbal,* the Supreme Court reinforces that conclusory allegations in an antitrust case are insufficient to state a claim. In *Twombly,* the plaintiffs alleged that defendants engaged in a conspiracy to restrict trade in the telephone and internet service markets, in violation of Section 1 of the Sherman Act. The Supreme Court held that plaintiffs' allegations were insufficient to state a claim under the Sherman Act because plaintiffs' allegations were conclusory. *See id* at 1966 ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement ... does not supply facts adequate to show illegality."). In addition, Decisions from this Court confirm that conclusory allegations with respect to antitrust injury should result in dismissal of the claim. *See, generally, US Airways Group, Inc. v. British Airways PLC,* 989 F. Supp 482 (S.D.N.Y. 1997); *Barrett v. U.S. Banknote Corp.,* 1992 WL 232055, September 2, 1992 (S.D.N.Y.) ("Mere conclusory allegations of conspiracy or of injury under the antitrust laws without any supporting facts permit dismissal.").

In this case, amid a blunderbuss of irrelevant facts, Plaintiffs allege only that "Plaintiffs have been injured in their business or property by reason of the unreasonable restraint of trade and commerce described above." This does not, effectively plead any injury. In fact, Plaintiffs allege that "insofar as the damages to plaintiffs *are measurable*, they amount to in excess of $1,000,000. *See* Complaint at ¶¶ 57 and 59 (emphasis added). Accordingly, it is clear that Plaintiffs' allegations as to damages are conclusory and arbitrary. Therefore, Defendants' Twelfth Affirmative Defense is appropriate.

5.    **Defendants' Fourteenth And Fifteenth Affirmative
Defenses, Based on Documentary Evidence, Are Valid Defenses**

For their Fourteenth and Fifteenth Affirmative Defenses, Defendants' allege that Plaintiffs' claims are barred due to the existence of documentary evidence, *i.e.,* the professional services agreement ("PSA"). Plaintiffs argue that these defenses should be dismissed because the PSA does not absolve Defendants' from liability and does not resolve all issues as a matter of law. Plaintiffs take this position while ignoring the fact that provisions of the PSA demonstrate a total absence of injury to Drs. Lafaro and Fleisher, or their practice group, Defendant Cardiac Surgery Group, P.C.

As discussed at length in Defendants' motion on the pleadings, the PSA specifically grandfathers Plaintiffs Lafaro and Fleisher allowing them to continue practicing medicine at WMC and permits them access to the operating rooms. (See Exhibit D to Menaker Affid.). Indeed, Drs. Lafaro and Fleisher continue to provide cardiothoracic services at the hospital.

In fact, the PSA actually creates a pro-competitive situation where physicians in competing practice groups vie for the same patients at the same hospital. Clearly, should this action go forward, those provisions of the PSA will be crucial for Defendants' to establish that Plaintiffs have not suffered antitrust injury, without which there is no valid antitrust claim. Accordingly, Plaintiffs' argument that the PSA cannot resolve all factual issues as a matter of law is strained, at best.[6] Thus, Plaintiffs cannot assert that "it appears *to a certainty*" that they will succeed "despite any state of the facts which could be proved in support of the defense."

---

[6] In this section of their Memorandum, Plaintiffs state that "The question put in issue by the Complaint is whether the [PSA] constitutes an unreasonable restraint of trade – a question which requires a fact-based analysis of its impact on competition in the relevant markets." (*See* Plaintiffs' Memorandum of Law at p. 15). Thus, Plaintiffs concede that whether Defendants entering into the PSA constitutes a violation of the antitrust laws is a fact issue. Yet, Plaintiffs ask this Court to dismiss defenses that highlight these factual issues before discovery. This contradictory position simply cannot be rationalized and is further evidence that Plaintiffs' motion should be denied.

*See Salcer v. Envicon Equities Corp.*, 744 F.2d at 939 (emphasis added); *Estee Lauder*, 189 F.R.D. at 272.

**6.    Defendants' Nineteenth And Twentieth Affirmative Defenses
Are Valid Because Plaintiffs Do Not Adequately Plead A Claim
For Tortious Interference With Prospective Business Relations**

For their Nineteenth and Twentieth Affirmative Defenses, Defendants allege that Plaintiffs' claim for tortious interference with business relations (Count III of the Complaint) fails to state a cause of action because Plaintiffs failed to allege that (1) "but for defendants' alleged conduct, plaintiffs would have treated a greater number of patients; and (2) "defendants' purported conduct was undertaken with the sole purpose of harming plaintiffs." (*See* Answer at ¶¶ 92 and 93, Exhibit B to Menaker Affid.).

As a threshold issue, it is premature to strike these defenses because discovery has not commenced and because the Court will likely not maintain supplemental jurisdiction over this state-based claim if Defendants' motion on the pleadings is granted. Further, based on well-established law, these defenses are legally sufficient, especially when faced with Plaintiffs' inadequate pleading.

Plaintiffs argue that these defenses are without merit because Plaintiffs are not required to plead that Defendants' alleged conduct was undertaken solely to harm Plaintiffs and because they properly alleged causation. Plaintiffs are mistaken on both accounts.

Initially, in order to recover for tortious interference with business relations, a plaintiff must allege that "the defendant (1) interfered with those relations, (2) either (a) with the *sole purpose of harming the plaintiff* or (b) by means that were dishonest, unfair or improper." *See Advanced Marine Technologies, Inc. v. Burnham Securities, Inc.*,   16 F. Supp.2d 375, 385

838837v.7

(S.D.N.Y. 1998) (emphasis added). In addition, "a tortious interference plaintiff must demonstrate that the defendant intentionally caused the third party not to enter into a … relationship with the plaintiff." *See id.* at 386, *citing GKA Beverage Corp. v. Honickman,* 55 F.3d 762, 768 (2d Cir 1995).

In this case, Plaintiffs failed to allege that Defendants' entered into the PSA with the sole purpose of harming Plaintiffs. In addition, despite their strained insistence to the contrary, Plaintiffs do not allege that Defendants' conduct was "dishonest, unfair or improper." Indeed, Plaintiffs admit that such allegation is merely inferred. (*See* Plaintiffs' Memorandum of Law at p. 17). Moreover, Plaintiffs did not plead that Defendants "intentionally" caused third parties, *i.e.,* patients, not to enter into business relationships with Plaintiffs. In fact, Plaintiffs do not allege any contact whatsoever between Defendants and Plaintiffs' prospective patients.

For these same reasons, Plaintiffs did not adequately plead causation – by failing to allege intentional conduct by Defendants to prevent patients from forming relationships with Plaintiffs, Plaintiffs cannot establish that they would have treated more patients but for the PSA.

Accordingly, Defendants' Nineteenth and Twentieth Affirmative Defenses are legally sufficient and should not be dismissed.

   **7.    Defendants' Twenty-Second And Twenty-Third Affirmative Defenses, Relating To Plaintiffs' Failure To Appear Before The Public Health Council, Are Valid Defenses Because It Is Unclear From The Complaint Whether Plaintiffs Claims Arise From  Alleged Restrictions on their Privileges**

In their Twenty-Second and Twenty-Third Affirmative Defenses, Defendants allege that Plaintiffs' claims are barred "to the extent that plaintiffs failed to exhaust all necessary administrative remedies and procedures" by appearing before the Public Health Counsel "to the

extent that plaintiffs complain of any medical staff membership and hospital privileges." (*See* Answer at ¶¶ 95 and 96, Exhibit B to Menaker Aff.).

Plaintiffs contend that these defenses should be dismissed because Plaintiffs seek monetary relief "for claims sounding in contract" and because "a physician need not seek administrative redress from the Public Health Council for claims unrelated to termination or restriction of his/her professional credentials because of questions about his or her competency or ethics." (*See* Plaintiffs' memorandum of law at p. 18-20).

First, it is not clear on the face of the Complaint whether Plaintiffs complain about restriction of their privileges at WMC. (*See* Complaint ¶¶ 31 and 32, Exhibit A to the Menaker Aff.). Thus, Defendants allege that Plaintiffs' claims are barred "to the extent" that they complain of restrictions to their privileges. If this action is permitted to go forward, discovery will be necessary to determine the validity of these defenses.

Second, under New York law, a physician who asserts a claim for damages under the antitrust laws based on a termination of privileges must appear before the Public Health Council. *See Johnson v. Nyack Hosp.*, 964 F.2d 116, 121 (2d Cir. 1992).

In *Johnson*, the plaintiff, a thoracic and vascular surgeon, did not bring suit seeking to reinstate his privileges. Rather, the plaintiff sought damages under the Sherman Act due to a termination of his privileges. The court determined that the plaintiff had to file a complaint with the Public Health Council before bringing a civil suit even thought he did not seek reinstatement of his privileges at the hospital. Specifically, the Court held that: a physician's claim for damages "that turns on whether the hospital legitimately terminated his privileges must first file a complaint with the PHC." *See id.* Therefore, if Plaintiffs' damage claims arise from an alleged

18

restriction of their privileges – which is not clear from the complaint – then Plaintiffs are required to appear before the PHC before this action can be heard. Accordingly, Defendants' Twenty-Second and Twenty-Third Affirmative Defenses are valid.

### 8. Defendants' Twenty-Sixth Affirmative Defense Alleging That Plaintiffs' Claims Are Barred By The Principles Of Waiver, Release, Estoppel And *Laches* Is A Valid Affirmative Defense

Plaintiffs argue that Defendants have not adequately plead their Twenty-Sixth Affirmative Defense alleging Waiver, Release, Estoppel and Laches and that those principles do not apply to Plaintiffs' claims. Again, in order to establish that a defense should be dismissed on a Rule 12(f) motion, the plaintiff must establish that (i) there is no question of fact that might allow the defense to succeed, (ii) there is no substantial question of law that might allow the defense to succeed, and (iii) the plaintiff will be prejudiced by the inclusion of the defense. *See, City of New York v. New York Pizza Development, LLC.*, 2006 WL 2850237 *3 (S.D.N.Y. 2006). Plaintiffs do not meet this standard with regard to Defendants' Twenty-Sixth Defense.

For one thing, Plaintiffs seek to preliminarily enjoin Defendants from enforcing provisions of the PSA. Such relief requires, among other things, a showing of irreparable harm unless immediate equitable relief is granted. *See, generally, Dana Distributors, Inc. v. Crown Imports, LLC*, --- N.Y.S.2d ---, 2008 WL 458577, February 19, 2008 (2d Dep't). In this case, the PSA was effective as of January 1, 2005 and yet, Plaintiffs did not commence this action until September 10, 2007, more than two and one-half years later. In addition, during that time, Plaintiffs were fully aware of the PSA and continued to practice, and indeed, still practice medicine at WMC as permitted by the grandfather clause. Accordingly, Plaintiffs are hard-pressed to argue that a defense of waiver, release, estoppel and *laches* cannot succeed.

19

For another thing, consistent with all of their arguments in this motion, Plaintiffs do not allege prejudice by the inclusion of this defense.

In addition, a legal question exists as to whether Plaintiffs claims in Counts II and III of the Complaint are waived due to the passage of the applicable statute of limitations governing Article 78 proceedings.

### 9. <u>Dismissal Of Defendants' Twenty-Ninth Affirmative Defense is Premature</u>

Lastly, Plaintiffs argue that Defendants' Twenty-Ninth Affirmative Defense (Plaintiffs are not entitled to treble damages) should be dismissed because the Clayton Act and Donnelly Act provide for treble damages for a violation of federal or state antitrust laws. This argument borders on the ridiculous.

Whether Plaintiffs are entitled to treble damages is an issue to be determined in the case and cannot be decided before the final adjudication of Plaintiffs' claims. By Plaintiffs' reasoning, they are entitled to treble damages simply by commencing this action and do not have to prove the alleged antitrust violations. This, of course, is not the case. *See* 15 U.S.C. § 15(a); *See also J. Truett Payne Co., Inc. v. Chrysler Motor Corp.*, 451 U.S. 557, 562, 68 L.Ed.2d 442 (1981); *Drug Mart Pharmacy Corp v. American Home Products Corp.*, 2007 WL 4526618, December 20, 2007 (E.D.N.Y.) ("Section 4 of the Clayton Act requires a plaintiff to demonstrate, *inter alia,* that it has suffered an "actual injury attributable to something the antitrust laws were designed to prevent" in order to recover treble damages for the defendant's violation of the antitrust laws.").

838837v.7

## POINT III

### PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THEY MISCONSTRUE THE PURPOSE OF AN AFFIRMATIVE DEFENSE

Even when faced with the arguments set forth above, Plaintiffs attempt to argue that their motion should be granted because many of the subject affirmative defenses state that Plaintiffs' failed to "adequately allege" their claims instead of alleging that those claims are without merit. In fact, Plaintiffs' counsel made this argument in a letter to Mr. Rabinowitz, dated February 11, 2008. In that letter, Plaintiffs noted that "one of the fundamental defects in several of the defenses is their assertion that various elements of plaintiffs' antitrust claims were 'not adequately alleged.'" (*See* Addendum hereto).

This argument places form over substance. The primary purpose of pleading an affirmative defense is to protect a plaintiff from an unfair surprise. *Colon ex rel. Molina v. BIC USA, Inc.*, 136 F. Supp.2d 196, 200 (S.D.N.Y. 2000). By interposing the subject affirmative defenses, Defendants sought to place Plaintiffs on notice that, should their motion for judgment on the pleadings not be successful, they would challenge the legal elements and purported facts underlying the antitrust and state-based claims.[7]

But instead of seeking clarification of the affirmative defenses, by this motion, Plaintiffs seek to foreclose Defendants from obtaining discovery on critical elements of Plaintiffs' claims and/or to preclude Defendants from arguing against Plaintiffs' claims either on summary judgment or at trial. In other words, Plaintiffs essentially argue that, because they "adequately

---

[7] That being said, if the Court determines that this case will go forward and that Defendants did not properly form their defenses (by stating that Plaintiffs did not adequately allege their claims instead of pleading that Plaintiffs' claims were simply without merit), then Defendants ask that they be permitted to amend their Answer to correct any deficiency in pleading.

21

pleaded" their claims, all inquiry into their sufficiency should be foreclosed and this Court should simply rule in their favor if the action goes forward.  Based on the law cited above, a Rule 12(f) motion is not intended to prevent a defendant from engaging in meaningful discovery.

22

## CONCLUSION

For all of the reasons stated above, Plaintiffs' motion should be denied, with prejudice, in its entirety.

Dated: Great Neck, New York
March 4, 2008

*Attorneys for Defendants New York Cardiothoracic Group, PLLC, Steven L. Lansman, M.D., David Spielvogel, M.D., Westchester County Health Care Corporation and Westchester Medical Center*

WESTCHESTER COUNTY HEALTH CARE CORP.
OFFICE OF LEGAL AFFAIRS

By: _____
    Jordy Rabinowitz (JR-6538)
Executive Offices – Taylor Care Center
Valhalla, New York 10595
(914) 493-2101

GARFUNKEL, WILD & TRAVIS, P.C.

By: _____
    Leonard M. Rosenberg (LR-6910)
    Justin M. Vogel (JV-5839)
111 Great Neck Road
Great Neck, New York 10021
(516) 393-2200

23

838837v.7