UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROCCO J. LAFARO, M.D.,
ARLEN G. FLEISHER, M.D.,
and CARDIAC SURGERY GROUP, P.C.,

          Plaintiffs,

vs.

NEW YORK CARDIOTHORACIC
GROUP, PLLC,
STEVEN L. LANSMAN, M.D.,
DAVID SPIELVOGEL, M.D.,
WESTCHESTER COUNTY HEALTH
CARE CORPORATION and
WESTCHESTER MEDICAL CENTER,

          Defendants.

07 Civ. 7984 (SCR)
DECISION AND ORDER

---

**STEPHEN C. ROBINSON, United States District Judge:**

    The Plaintiffs in this case, Rocco Lafaro, M.D., Arlen Fleisher, M.D., and their professional corporation, Cardiac Surgery Group, P.C. ("CSG") brought suit against the Defendants based on an alleged violation of the Sherman Antitrust Act. *See* 15 U.S.C. § 1. Specifically, the Plaintiffs allege that the Defendants violated the Sherman Act by entering into and operating under a professional services agreement which makes Defendant New York Cardiothoracic Group, PLLC ("NYCG") the exclusive provider of cardiothoracic services at Defendant Westchester Medical Center ("WMC"). In addition to this federal claim, Plaintiffs bring supplemental state law claims including violation of New York's General Business Law, breach of contract, breach of bylaws, and tortious interference with contract and prospective business relations. The Plaintiffs seek injunctive and monetary relief in excess of $1 million.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

The Defendants moved for judgment on the pleadings to dismiss the case on various grounds, including that the Defendants are immune from antitrust liability under the state action or *Parker* doctrine. *See Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307 (1943). While that motion was pending before the Court, the Plaintiffs moved for a preliminary injunction and temporary restraining order seeking to preserve the status quo at the WMC during the pendency of this lawsuit by preventing Defendants Landsman and the WMC from reassigning two of the Plaintiffs' five morning operating room slots to Defendant NYCG.

For the reasons set forth below, the Court hereby 1) denies the Plaintiffs' motion for a preliminary injunction and temporary restraining order and 2) grants the Defendants' motion for judgment on the pleadings.

**I.    Facts**

Plaintiffs Rocco J. Lafaro, M.D. and Arlen G. Fleisher, M.D. are cardiothoracic surgeons whose practices have long been based at Defendant WMC, a public hospital owned and operated by the county of Westchester. They are also principals of Plaintiff CSG, a professional corporation.

Defendants Steven L. Lansman, M.D. and David Spielvogel, M.D. are cardiothoracic surgeons who became members of the WMC medical staff in 2004. They are shareholders of Defendant NYCG. Defendant Lansman is also the Director of the Department of Cardiothoracic Surgery at the WMC.

Defendant Westchester County Health Care Corporation ("WCHCC") is a public benefit corporation created by New York State in 1997 to take over the facilities and

operations of the Westchester County Department of Hospitals, including the WMC. *See* N.Y. Pub. Auth. §§ 3300 *et seq*. According to the legislative findings and purpose, the WCHCC performs an essential public and governmental function by operating the WMC. N.Y. Pub. Auth. § 3301(5). To enable the WCHCC to best serve this function, the Legislature empowered the WCHCC with "the legal, financial and managerial flexibility to take full advantage of opportunities and challenges presented by the evolving health care environment." N.Y. Pub. Auth. § 3301(4).

Included in this authority is the power "to enter into contracts and to execute all instruments necessary or convenient or desirable for the purposes of the corporation to carry out any powers expressly given to it in [the enabling statute]." N.Y. Pub. Auth. § 3305(11). Also included is the power "[t]o provide health and medical services for the public directly or by agreement or lease with any person, firm or private or public corporation or association . . . and to make internal policies governing . . . health and medical services." N.Y. Pub. Auth. § 3306(2). The enabling statute also granted the WCHCC the power "[t]o determine the conditions under which a physician may be extended the privilege of practicing within a health facility under the jurisdiction of the corporation . . ." N.Y. Pub. Auth. § 3306(6).[1]

In August 2004, amidst serious problems involving the WMC's management and fiscal operations which became widely publicized, the cardiothoracic surgery department

---

[1] Further relevant provisions of the enabling statute grant the WCHCC the powers to: "operate, manage, superintend and control any health facility under its jurisdiction . . ." Pub. Auth. § 3306(1); "provide health care services and health facilities for the benefit of the residents of the state of New York and the county of Westchester . . ." Pub. Auth. § 3301(5); "sue and be sued," "make and alter by-laws for its organization and management . . . ," and "acquire by purchase, grant, lease, gift or otherwise and to hold and use property necessary, convenient or desirable to carry out its corporate purposes . . . ." Pub. Auth. §§ 3305(1), (4), and (5)(a).

3

experienced unrest and attrition. Compl. ¶¶ 22, 24. The WMC took action by recruiting Defendants Lansman and Spielvogel to join their staff and entering into an exclusive professional services agreement with Lansman and Spielvogel's professional corporation, Defendant NYCG. Compl. ¶¶ 25, 27, 31, 32. This agreement provided that NYCG would be the exclusive provider of cardiothoracic surgery services at the WMC with the exception of certain "grandfathered-in" surgeons, including Plaintiffs Lafaro and Fleisher, who would be permitted to continue practicing at the facility. Compl. ¶¶ 31, 32. It is this professional services agreement that is at the center of Plaintiffs' Sherman Act claims.

## II. Defendants' Motion on the Pleadings

In *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307 (1943), the United States Supreme Court held that the States, acting as sovereigns, are exempt from liability under the Sherman Antitrust Act. Thus, a State acting in its sovereign capacity is free to impose certain anticompetitive restraints that displace competition with regulation. *Id.* at 350-52. While a state subdivision, such as a municipality, agency or public corporation, does not receive the same extent of federal deference as a State itself, a state subdivision is entitled to state action immunity where it acted "pursuant to a clearly expressed state policy" to displace competition. *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39-40, 105 S.Ct. 1713 (1985); *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123 (1978).

To meet this requirement, the subdivision need only establish that the state legislature, in enacting the statute enabling the subdivision's actions, intended "from the authority given [to it] to operate in a particular area, that the legislature contemplated the

4

kind of action complained of." *See Louisiana Power & Light*, 435 U.S. at 415 (quotations omitted). This showing may be made by demonstrating from the language of the enabling statute or from its legislative history that it was foreseeable to the state legislature in passing the statute that suppression of competition would result. *See City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 372-73, 111 S.Ct. 1344 (1991); *Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.*, 790 F.2d 1032, 1042-43 (1986).

### A. Foreseeability

Thus, for the Defendants to gain state action immunity in this case, they must demonstrate that it was foreseeable to and thus authorized by the New York State Legislature that the WCHCC could enter into contracts granting certain doctors exclusive privileges to practice at the WMC. The Court finds that this requirement is met.

In the WCHCC enabling statute, the Legislature stated that New York's residents would best be served where the WCHCC would have the "legal, financial and managerial flexibility to take full advantage of opportunities and challenges presented by the evolving health care environment." N.Y. Pub. Auth. § 3301(4). It also granted the WCHCC the powers "to enter into contracts . . . necessary or convenient or desirable for the purposes of the corporation to carry out any powers expressly given to it" and "[t]o provide health and medical services for the public directly or by agreement or lease with any person, firm or private or public corporation or association . . . and to make internal policies governing . . . health and medical services . . . ." N.Y. Pub. Auth. §§ 3305(11), 3306(2). Reading these provisions together, it is clear that the Legislature intended for the WCHCC to be free to enter into contracts with private parties to provide medical care. Furthermore, in granting the WCHCC the power "[t]o determine the conditions under

5

Case 7:07-cv-07984-SCR   Document 49   Filed 09/11/2008   Page 6 of 11

which a physician may be extended the privilege of practicing within a health facility," the Legislature must have contemplated that restrictions could and would be imposed that would result in granting some doctors permission to practice at the WMC while prohibiting others from doing so, and also that the privileges extended to physicians working at the hospital, including access to operating rooms, may vary. N.Y. Pub. Auth. § 3306(6).

In carrying out the anti-competitive conduct complained of, the WCHCC made a decision that New York residents would best be served by entering into an exclusive professional services agreement between the WMC and the NYCG. The Legislature, in granting the WCHCC the broad and unfettered powers enumerated above, must have contemplated, foreseen, and thus authorized the WCHCC to exercise those powers and suppress competition by entering into this type of exclusive contract. As a result, the WCHCC's decision to enter into a contract making NYCG the exclusive provider of cardiothoracic services at the WMC falls within the purview of the state action doctrine. Defendants WCHCC and WMC were acting pursuant to a clearly articulated state policy and are immune from Sherman Act liability based on this conduct.

The Plaintiffs contend that when viewing the WCHCC's enabling statute against the backdrop of New York's Health Care Reform Act (HCRA), 1996 N.Y. Laws Ch. 639, it cannot be said that the Defendants were acting pursuant to a clearly expressed state policy to displace competition. Plaintiffs contend that the HCRA effected a large scale policy shift to deregulate hospitals and that as a result of this shift, the WCHCC's enabling statute would have to affirmatively exempt it from the state's competition-favoring policies in order for the WCHCC to be entitled to state action immunity.

6

Adopting Plaintiffs' argument would, in effect, heighten the threshold to gaining state action immunity for entities operating within the realm of New York's health service providers.

Contrary to Plaintiffs' contentions, however, the HCRA did not signify an overarching change in the regulation of New York's health care industry. Indeed, Plaintiff's argument that New York has adopted a statewide policy of hospital deregulation is belied by the Legislature's creation in 2005 of the Commission on Health Care Facilities in the 21st Century, also known as the Berger Commission, a state-run organization charged with assessing which hospitals in New York required closing or restructuring due to excess capacity. *See* 2005 N.Y. Laws Ch. 63, Part E. The fact that the Legislature established this commission to review and regulate hospitals in New York directly undermines Plaintiffs' argument that New York's overarching policy for hospitals in the state is one of unrestricted competition. Moreover, even if there were such an overarching policy, there is no reason to believe that professional service agreements like the one at the center of this litigation would violate that policy.

Plaintiffs rely on *New York v. St. Francis Hosp.*, 94 F.Supp.2d 399 (S.D.N.Y. 2000) to bolster their position on the impact of the HCRA on state action immunity, but *St. Francis*'s direct applicability to the instant case is limited. The Court's decision in *St. Francis* to deny the defendants state action immunity was based on the defendants' failure to satisfy the state supervision prong, and not the foreseeability prong, of the state action immunity test.[2] The Court discussed the potential impact of the HCRA on the

---

[2] In *St. Francis*, the State of New York alleged that the defendants, two private, not-for-profit hospitals, had violated the Sherman Act by jointly fixing the rates, terms and conditions for services provided at their facilities and by improperly dividing the market

7

immunity issues before the Court, but it ultimately left open the question of what that impact should be. Moreover, the entities claiming immunity in *St. Francis* were private parties acting pursuant to an operating certificate which dealt with rate setting—an issue squarely addressed by the HCRA—rather than a public benefit corporation acting under the authority of an enabling statute to enter into an exclusive professional services agreement as in this case.

While focusing on *St. Francis*, the Plaintiffs fail to acknowledge *Daniel v. American Board of Emergency Medicine*, 988 F.Supp. 127 (W.D.N.Y. 1997), which was decided just over a year after the enactment of the HCRA and involved an antirust claim by physician plaintiffs against defendants including the American Board of Emergency Medicine ("ABEM"), hospitals, and medical schools. The basis of the claim was that the defendants had conspired to improperly restrict competition between ABEM certified and non-certified emergency physicians by eliminating ABEM's prior alternative qualification to sit for the examination that was based on years of practice. The Court granted immunity to a defendant public benefit corporation that, like the WCHCC, was empowered to operate a hospital system based on language in the enabling statute that

---

for provision of services between them. The defendants countered that their anti-competitive conduct was permitted under an operating certificate for a joint venture issued pursuant to Article 28 of the Public Health Law and that they were therefore entitled to state action immunity. That operating certificate was granted prior to New York's enactment of the Health Care Reform Act of 1996 ("HCRA"). In ruling on the parties' cross-motions for summary judgment, the Court found that the defendants had satisfied the foreseeability prong for their conduct prior to the enactment of the HCRA, but left open the question of whether the defendants would be immune from liability based on their conduct after the HCRA's enactment, remarking that the Legislature enacted the HCRA to "promote competition in the health care market place by increasing reliance on market incentives while reducing the role of legislation." *Id.* at 409, quoting 1998 N.Y. Law Ch. 639. The Court found it unnecessary to answer that question since the defendants failed to satisfy the active state supervision requirement. The Court denied state action immunity on that basis.

statute that was strikingly similar to the language in the WCHCC's enabling statute. In doing so, the Court applied the normal test for state action immunity without factoring the HCRA into its analysis.

Given the language of the WCHCC's enabling statute, it is clear that the Legislature contemplated, and therefore authorized, the very type of anti-competitive conduct that arose in this case. The fact that the HCRA was in place does not compel a different conclusion. Thus, the foreseeability requirement of the state action immunity test is met as to the WCHCC and the WMC.

Under Second Circuit precedent, the private defendants, Defendants Lansman and Spielvogel, and their professional corporation NYCG, are also immune from antitrust liability arising from the conduct complained of. The Legislature contemplated that private parties would contract with the WCHCC and that such private parties must be able to perform their duties under such contracts. It necessarily follows that these private parties must be granted immunity, since "allowing successful tangential attacks on the [WCHCC's] activities through suits against the third parties [acting in concert with it] would effectively block the efforts of the [WCHCC]" to perform its duties by contracting with third parties. *See Cine 42nd St.*, 790 F.2d at 1048; *see also Electrical Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 125-27 (2d Cir. 2003); *Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 188 n.14 (S.D.N.Y. 2006). Thus, all Defendants are immune from Sherman Antitrust liability under the state action or *Parker* doctrine.

### B. Active State Supervision

Plaintiffs contend that in order to gain state action immunity the Defendants must also demonstrate that there was active state supervision over the complained of conduct.

9

This requirement need not be met, however, where the actor is a public benefit corporation, since a public benefit corporation is a political subdivision of the state and its interests are therefore public rather than private. *See Cine 42nd St.*, 790 F.2d at 1047 (citing *Hallie*, 471 U.S. 34, 105 S.Ct. 1713, 1720-21, 1721 n.10 (1985)); *see also Doron*, 423 F.Supp.2d at 187-88; *Daniel*, 988 F.Supp. at 183. The WCHCC is a public benefit corporation, and therefore the Defendants need not satisfy the active state supervision requirement to be entitled to state action immunity.

### III. Plaintiffs' Remaining Claims

Given that the Plaintiffs' sole federal claims are dismissed, the Court declines to retain supplemental jurisdiction over the state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966).

## IV. Conclusion

For the foregoing reasons, the complaint is hereby dismissed. The Clerk of the Court is directed to close the case.

Plaintiffs' motion to strike various of Defendants' affirmative defenses is denied as moot. The grounds on which the Court is dismissing the complaint do not involve the defenses at issue in Plaintiffs' motion.

Plaintiffs' motion for a preliminary injunction and temporary restraining order to preserve the status quo during the pendency of this lawsuit is also denied as moot.

*It is so ordered.*

Dated: September 11, 2008
White Plains, New York

Stephen C. Robinson
United States District Judge